

2007 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

6-13-2007

# Emerald Investors v. Gaunt Parsippany

Precedential or Non-Precedential: Precedential

Docket No. 05-3706

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2007

Recommended Citation

"Emerald Investors v. Gaunt Parsippany" (2007). *2007 Decisions*. Paper 844.
http://digitalcommons.law.villanova.edu/thirdcircuit_2007/844

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2007 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

———

Nos. 05-3706 and 05-4134

———

EMERALD INVESTORS TRUST

v.

GAUNT PARSIPPANY PARTNERS;
119 CHERRY HILL ASSOCIATES, L.L.C.;
99 CHERRY HILL ASSOCIATES, L.P.;
HORSEHEADS COMMERCIAL DEVELOPMENT PARTNERS,
L.P.;
RECKSON OPERATING PARTNERSHIP, L.P.;
JOHN DOES 1 THROUGH 10

Gaunt Parsippany Partners;
119 Cherry Hill Associates, L.L.C.;
99 Cherry Hill Associates, L.P.;
Horseheads Commercial
Development Partners, L.P.;
Reckson Operating Partnership, L.P.,

Appellants in No. 05-3706

———

EMERALD INVESTORS TRUST,

Appellant in No. 05-4134

v.

GAUNT PARSIPPANY PARTNERS;
119 CHERRY HILL ASSOCIATES, L.L.C.;
99 CHERRY HILL ASSOCIATES L.P.;
HORSEHEADS COMMERCIAL DEVELOPMENT
PARTNERS, L.P.; RECKSON
OPERATING PARTNERSHIP, L.P.;
JOHN DOES 1 THROUGH 10

———

On Appeal from the United States District Court
for the District of New Jersey
(D.C. Civ. No. 02-1939)
Honorable William J. Martini, District Judge


Argued November 8, 2006

BEFORE: SLOVITER, CHAGARES, and
GREENBERG, Circuit Judges

(Filed: June 13, 2007)

W. James Cousins (argued)
McGowan & Cousins
P.O. Box 391
Litchfield, CT 06759

   Attorneys for Appellants in No. 05-3706
   and Appellees in No. 05-4134

Kenneth L. Leiby, Jr. (argued)
Richard J. Shackleton
Shackleton & Hazeltine
159 Millburn Ave.
Millburn, NJ 07041

   Attorneys for Appellant in No. 05-4134
   and Appellee in No. 05-3706

OPINION OF THE COURT

GREENBERG, Circuit Judge.

I. INTRODUCTION

The parties appeal and cross-appeal from a judgment and orders in this action that Emerald Investors Trust ("Emerald Trust") brought, predicated on the district court's asserted diversity of

2

citizenship jurisdiction, seeking recovery on two unpaid promissory notes and foreclosure of the mortgages securing the notes. The district court, over the defendants' objection, held that it had diversity of citizenship jurisdiction because the sole beneficiary of Emerald Trust was Emerald Investors Ltd. ("Emerald Ltd."), a corporation incorporated in the British Virgin Islands where it had its principal place of business, and the defendant partnerships, all of which are undoubtedly citizens of states within the United States, are not citizens of the British Virgin Islands.

As always, after we are satisfied of our own jurisdiction,[1] the threshold, and, indeed, as it turns out, the only issue on this appeal is whether the district court had subject matter jurisdiction. Inasmuch as we cannot determine if the district court had diversity of citizenship jurisdiction and there is no other basis for it to have exercised jurisdiction, we do not reach the merits of the case. Rather, we will remand the matter to the district court to resolve the jurisdictional issue after allowing discovery and conducting any hearing that it deems necessary.

## II. FACTS AND PROCEDURAL HISTORY

Defendants, Gaunt Parsippany Partners, 119 Cherry Hill Associates, L.L.C., 99 Cherry Hill Associates, L.P., and Horseheads Commercial Development Partners, L.P., whose three principal owners and partners were Newby Toms, Mitchell Wolff, and Joel Hoffman (the "partners"), were in the business of owning and operating office buildings. Though the three partners conducted their business through these four entities, Horseheads was the only one existing at the time that Emerald Trust filed the complaint in this case. Nevertheless, all of the four entities, along within Reckson Operating Partnership, L.P., have been defendants in this case and all five entities filed the first, and as it turns out, the principal appeal after completion of the district court proceedings.

The case may be traced back to January 1994, when the properties the partners owned in Parsippany, New Jersey, which consisted of two sites, the 99 Cherry Hill property and the 119 Cherry

---

[1] Clearly, we do have appellate jurisdiction.

3

Hill property ("the NJ properties"), were performing poorly.[2] This circumstance caused the partners to refinance these properties with the United Bank of Kuwait ("the United Bank"), an undertaking requiring them to increase the debt on property they owned in Horseheads, New York, by $2 million to be used by the partners for the NJ properties. At that time the partners entered into certain agreements relating to the refinancing.[3] First, they agreed to treat the $2 million as a loan from them, rather than from United Bank, to the entities that owned the NJ properties even though United Bank supplied the $2 million. In exchange, each of the two entities owning the NJ properties gave each of the partners a note for $333,333.33 secured by a mortgage that was subordinate to the United Bank's senior mortgage. The notes bore a 12% annual rate of interest and were due on December 31, 1999. The partners created the subordinated mortgages to protect their equity in the properties from partnership creditors. As a result of the subordinated mortgages, the partners appeared to be secured creditors instead of equity owners with respect to the $2 million. The partners also entered into parity agreements that provided that they ranked equally among themselves with respect to payment of or security on the loans.

Thereafter, the relationship among Toms, Wolff, and Hoffman deteriorated leading Toms to seek to withdraw from their business dealings. Accordingly, in 1996 the partners began negotiating the terms of an agreement for Hoffman and Wolff to acquire Toms's interests in the Horseheads and NJ properties. As a result of the negotiations, the partners simultaneously entered into six related agreements.[4] First, they entered into two mortgage modification agreements modifying the notes and subordinated mortgages so that

---

[2]The facts in this case are unusually complicated but we have focused on what needs to be explained for purposes of this opinion. If we were reaching the merits of the case we would have had to explain much more. The district court set forth the facts at greater length in its opinion in Emerald Investors Trust v. Gaunt Parsippany Partners, No. 02-CV-1939, 2005 WL 1705779 (D.N.J. July 21, 2005).

[3]Their four entities were also parties to these agreements but we need not detail which entity was a party to which agreement. Rather, as a convenience we refer to the agreements as if only the partners signed them.

[4]We do not detail the entities' roles in these agreements.

4

the sum due on each was increased from $333,333.33 to $583,333.33 with the notes simultaneously becoming non-interest bearing. At the same time the face value of the notes was reduced to $250,000, the reduction being contingent on installment payments on them being timely made. The mortgage modification agreements also provided that repayment was to be made only to the extent that any refinancing or sale of the properties resulted in "net proceeds." The partners also entered into two subordination agreements with United Bank that provided that the partners were not entitled to any payment on their loans until the senior United Bank mortgages were "paid in full." Finally, the partners entered into two second mortgage parity agreements providing for them to share equally in any "net proceeds" realized from a sale of the properties. In August 1997 Toms assigned his notes and mortgages to Emerald Trust, an entity that he controlled.

In August 1998 Reckson, which is completely separate from and independent of the other four defendants, purchased the NJ properties for $19,905,000. As far as we can ascertain this purchase was in an arms-length transaction. At that time, even though approximately $24,000,000 was due to United Bank on the debts its mortgages on the NJ properties secured, it nevertheless accepted $16,459,664.95[5] on the debts and mortgages and discharged the mortgages, treating them as "satisfied." App. at 201. According to defendants, United Bank discharged its mortgages on the NJ properties for less than was due on them because the approximately $8 million shortfall to satisfy the obligations to United Bank in full was added to the debt that the mortgage United Bank held on the Horseheads property secured.

Wolff and Hoffman also discharged their subordinated mortgages on the NJ properties marking them as "paid and satisfied" upon receipt of $1,202,729.44 in the form of Reckson Operating Units. According to Wolff and Hoffman, they did so because they had no need to retain the mortgages. Emerald Trust, however, did not discharge the subordinated mortgages that Toms had assigned it. Thus, at the closing on the sale of the NJ properties to Reckson all of the mortgages in favor of United Bank, Wolff, and Hoffman on the NJ properties were satisfied, leaving the subordinated mortgages previously held by Toms but since assigned to Emerald Trust as the

---

[5]This sum included principal and interest.

only outstanding mortgages on the properties.[6] Inasmuch as Emerald Trust's mortgages remained outstanding, Hoffman and Wolff entered into an indemnity agreement with Reckson's title insurance company for the NJ properties promising to indemnify it should Emerald Trust make any claims on the NJ properties by reason of the liens created by the mortgages that Toms assigned to it. On December 31, 1999, when Emerald Trust's notes secured by the NJ properties came due, none of the defendants nor anyone else paid the notes, defaults that caused Emerald Trust to file this action on April 25, 2002, to recover on the notes and to foreclose its subordinated mortgages on the NJ properties.[7]

Subsequently, Emerald Trust moved for summary judgment seeking a judgment of foreclosure but on August 30, 2004, the district court denied Emerald Trust's motion and on October 29, 2004, the court also denied a motion Emerald Trust filed seeking reconsideration of the August 30, 2004 order. The court thereafter conducted a bench trial on the merits of the controversy in January 2005. Prior to and during the trial the defendants did not raise any issue regarding the court's subject matter jurisdiction which, as we have noted, Emerald Trust predicated on diversity of citizenship between Emerald Trust on one hand and the defendants on the other. The defendants, however, did raise an issue regarding diversity of citizenship in post-trial submissions. To resolve the jurisdictional issue the district court directed the parties to submit affidavits explaining their citizenship following which it heard oral argument regarding the parties' citizenship and the court's diversity jurisdiction. At the oral argument the defendants requested an opportunity to engage in further discovery on the jurisdictional issue but the court rejected that request, though it did permit the parties to submit further

---

[6]We are addressing only preexisting debt and are not considering any new mortgage that Reckson may have placed on the properties for if there was such a mortgage it would not be material to the issue on this appeal.

[7]At that point the Emerald Trust's mortgages no longer may have been subordinated to any other mortgage as the United Bank mortgages to which the Emerald mortgages had been subordinated were discharged. We, however, are not making any determination on that point which could involve intricate principles of New Jersey law. See East Rutherford Sav. Loan & Bldg. Ass'n v. Neblo, 139 A. 172 (N.J. Ch. 1927).

briefing on the issue.

Ultimately the court found that Emerald Trust was an unincorporated business trust and it concluded that the law applied in this circuit directs a court to look to the citizenship of the trust's beneficiaries when determining the citizenship of such a trust.[8]  As we already have indicated, the court found that Emerald Trust's sole beneficiary was Emerald Ltd., a corporation incorporated in the British Virgin Islands where it also had its principal place of business, and thus Emerald Trust was a citizen of the British Virgin Islands for jurisdictional purposes.  It is interesting that this finding was inconsistent with Emerald Trust's complaint in this case as it asserted in the complaint that it was a citizen of Florida.  Inasmuch as defendants conceded that they were not citizens of the British Virgin Islands and undoubtedly were citizens of states within the United States, the court concluded that it did have diversity of citizenship subject matter jurisdiction.[9]

After determining that it had jurisdiction the district court reached the merits of the case with respect to which it concluded:

> At its core, this case concerns two partners' attempt to dispose of secured properties without the consent of their former partner despite their former partner's secured interests in the properties.  Unable to obtain Toms' consent to release his mortgages on the [NJ] properties, Wolff and Hoffman decided to take their chances that under the relevant agreements (specifically, the [mortgage modification agreements])

---

[8]This conclusion was directly contrary to a dictum in General Heat & Power Co. v. Diversified Mortgage Investors, 552 F.2d 556, 557 n.1 (3d Cir. 1977), in which in a case involving a business trust we said, without limiting the type of trust to which we were referring, that "the citizenship of a trust is generally that of the trustee."

[9]A court's accepting a party's representation as to its citizenship might be problematical as a party by a false concession seemingly could create subject matter jurisdiction by consent, something it cannot do.  In this case, however, we are satisfied that the concession was correct as we can discern nothing in the record suggesting that any defendant could be a citizen of the British Virgin Islands or was a citizen anywhere other than in the United States.

they would owe nothing to Toms despite the properties' sale. They therefore agreed to indemnify the title insurer on the transaction. Hoffman and Wolff, however, miscalculated. Under the [mortgage modification agreements] Emerald was entitled to recover on its notes at least its share of the $2,659,994.65 in net proceeds from the sale of the properties. However, Defendants having breached this and other obligations under the [mortgage modification agreements], the [mortgage modification agreements] ceased to place any limitation on Emerald's rights under the notes and mortgages after December 1999. Nor did the Subordination Agreements or Second Mortgage Parity Agreements continue to place any limitations on Emerald's rights under the notes and mortgages once [United Bank], Hoffman, and Wolff released their mortgages. Thus, when the notes came due in December 1999 and nothing was paid, Emerald became entitled to recover on the terms stated on the faces of its notes and mortgages.

Emerald Investors Trust v. Gaunt Parsippany Partners, No. 02-CV-1939, 2005 WL 1705779, at *6 (D.N.J. July 21, 2005).

Accordingly, the district court found that Emerald Trust was due $583,333.33 on each note, plus 12% in prejudgment interest, a rate that the parties had fixed, calculations that yielded a total judgment of $1,193,678.52. This calculation did not allow Emerald all of the interest it sought to recover. Of course, if defendants did not pay this sum there would be a sale of the NJ properties to satisfy the judgment. Defendants then appealed from the order entering judgment and Emerald Trust cross-appealed from the order denying its motion for summary judgment, the order denying reconsideration of the denial of that motion, and the judgment and order partially denying its claim for interest.

### III. JURISDICTION AND STANDARD OF REVIEW

The district court attempted to exercise diversity of citizenship jurisdiction pursuant to 28 U.S.C. § 1332(a) and we have jurisdiction pursuant to 28 U.S.C. § 1291. The parties raise numerous issues on

this appeal and cross-appeal which we would review under various standards if we reached them. But our disposition of this appeal begins and ends with an examination of whether the district court had subject matter jurisdiction. Thus, the principle that a determination of "[w]hether the district court possessed subject matter jurisdiction is an issue of law which this court reviews de novo" governs our review. In re Phar-Mor, Inc. Litig., 172 F.3d 270, 273 (3d Cir. 1999). If we determined that the district court did not have subject matter jurisdiction we would direct it to dismiss the case even at this late stage of the litigation. See Great S. Fire Proof Hotel Co. v. Jones, 177 U.S. 449, 453-54, 20 S.Ct. 690, 691-92 (1900).

IV. DISCUSSION

As we have explained, the district court decided that it could exercise diversity of citizenship jurisdiction because: (1) Emerald Trust is an unincorporated business trust; (2) a court determines the citizenship of an unincorporated business trust by determining the citizenship of its beneficiary or beneficiaries; (3) the sole beneficiary is Emerald Ltd., a corporation incorporated in the British Virgin Islands and having its principal place of business there; and (4) none of the defendants are citizens of the British Virgin Islands. The court did not consider the citizenship of Michael Houlis, a citizen of Florida, the trustee of Emerald Trust, in making this determination. This appeal requires us to determine whether, when ascertaining the citizenship of a trust for diversity of citizenship purposes, we should look to the citizenship of the trust's beneficiary, its trustee, or both, or use an alternative method to determine citizenship based on the functions of the trustee and beneficiary with respect to management of the trust in the particular case.[10] It is

_____

[10]We address certain of the defendants' arguments at this point because their disposition will not be controlling and it is convenient to consider them at the outset of the discussion section of the opinion. Defendants argue: (1) Emerald Trust is a traditional express trust and not, as the district court held, an unincorporated business trust, and, thus, we should look to the citizenship of its trustee who it asserts is a citizen of Florida (Apparently Emerald Trust which alleged in the complaint that it was a citizen of Florida originally also believed that citizenship of its trustee controlled.); (2) even if Emerald Trust is a business trust and we should look to the citizenship of its beneficiary, Emerald Ltd., to

9

determine Emerald Trust's citizenship, Emerald Ltd.'s principal place of business is in New York. Thus, Emerald Trust is a citizen of New York and there would not be complete diversity of citizenship between Emerald Trust and the defendants; and (3) Emerald Trust, though the plaintiff, is not the real party to the controversy and thus its citizenship is not the determinative factor in a diversity of citizenship analysis.

Our research, however, has not led us to conclude that the type of trust calls for a difference in treatment when determining a trust's citizenship for diversity of citizenship jurisdictional purposes. The distinction between a traditional express trust and a business trust is that "[i]n what are called 'business trusts' the object is not to hold and conserve particular property, with incidental powers, as in the traditional type of trusts, but to provide a medium for the conduct of a business and sharing its gains." Morrissey v. Comm'r of Internal Rev., 296 U.S. 344, 356-57, 56 S.Ct. 289, 294-95 (1935). The cases defendants cite do not support its contention calling for differential treatment based on the type of trust. Moreover, Emerald Trust may be, as the district court believed, a business trust for the trust agreement states: "The purpose of the Trust shall be to make, hold, liquidate, and distribute investments of any lawful kind or character in trust for and for the benefit of Grantor, without regard to any rule of prudent investment by fiduciaries." App. at 319. The reference to nonapplicability of limitations on fiduciaries suggests that Emerald Trust may not be a traditional express trust. But we reach no conclusion on that point.

Defendants' second argument is also without merit as the record now appears. The district court determined that the British Virgin Islands was Emerald Ltd.'s principal place of business, basing its determination on the affidavit of R. John Usher, the director of the company, Valdex Investments Ltd., that caused the formation of Emerald Trust. Usher stated that the Emerald Ltd.'s only office was in the British Virgin Islands and all of its directors always have been in the British Virgin Islands. While defendants challenge this conclusion, they have not demonstrated that the corporation's principal place of business was in New York.

Defendants' third argument is also unpersuasive because defendants advance it in an attempt to invoke a "real party to the controversy" test that the Supreme Court rejected in Carden v. Arkoma Associates, 494 U.S. 185, 187 n.1, 110 S.Ct. 1015, 1017 n.1 (1990), as the Court observed in that case that not a single case cited by the dissent

10

surprising that at this date after so many years of litigation involving trusts that the method for determination of a trust's citizenship rather than being settled is a subject of great differences of opinion.

1.  The Supreme Court: <u>Navarro Savings</u> and <u>Carden</u>.

In 1978, we looked to the citizenship of <u>both</u> the trustees and the investors (beneficiaries) in determining the citizenship of a trust for diversity purposes.  <u>Riverside Mem'l Mausoleum, Inc. v. UMET</u>

---

supported the assertion that the "real party to the controversy" test is relevant to the citizenship for diversity purposes of an artificial entity. Of course, as we explain below, the test with respect to the citizenship of an entity is distinct from the test applied with respect to the citizenship of trustees if they sue in their own names. When trustees sue in their own names it is critical that they be the real parties to the controversy.

Defendants also make the argument related to their real party in interest contention that Emerald Trust could not bring this action in its own name as "a traditional express trust is not recognized as a separate entity with capacity to sue or be sued in its own name." Appellants/cross-appellees' br. at 24. We reject this argument. Under Federal Rule of Civil Procedure 17(a) "[e]very action shall be prosecuted in the name of the real party in interest." Certainly, inasmuch as Toms made his assignments of his notes and mortgages to Emerald Trust, in ordinary understanding Emerald Trust would be regarded as the real party in interest as it holds the notes and mortgages that it seeks to enforce in this action. In short, we cannot understand why if Emerald Trust has the capacity to hold the notes and mortgages it should not have the capacity to enforce them.

In this regard we point out that a determination that a trust itself is the real party in interest with the capacity to sue or be sued can exist side by side with a  rule requiring that the citizenship of the trustee or beneficiary or both determines the trust's citizenship for diversity of citizenship purposes. On this point, however, as we shall explain later, we are not precluding defendants from making an alter ego argument with respect to Emerald Trust on the remand that we are ordering. See <u>infra</u> note 21. While it is true that Rule 17(a) indicates that a trustee of an express trust "may" sue in its own name without joining the trust as a plaintiff, the rule does not require that he do so and does not provide that an express trust cannot sue in its own name.

11

Trust, 581 F.2d 62, 65 (3d Cir. 1978).[11]  But since <u>Riverside</u>, the

[11]Actually our holding in <u>Riverside</u> was not completely clear as there we were focusing on the effect on a citizenship determination of the citizenship of the investors in an action against a trust.  <u>Riverside</u>, 581 F.2d at 65.  But we are confident that in <u>Riverside</u> we intended to hold that a court should examine the citizenship of the trustees and the beneficiaries to determine the citizenship of the trust as we completed our discussion on the jurisdictional point by indicating that "we conclude, as did the district court, that we must look to the citizenship of the [trust] investors and not <u>simply</u> that of the trustees."  <u>Id</u>. (emphasis added).  Though we acknowledge that in reaching our conclusion we are relying on our use of the word "simply" in <u>Riverside</u> and that we therefore are placing our reliance on an arguable point, still we think our reading of <u>Riverside</u> is correct, though we acknowledge that there may be a contrary view.  <u>See</u> <u>Navarro Sav. Ass'n v. Lee</u>, 446 U.S. 458, 466 n.1, 100 S.Ct. 1779, 1784 n.1 (1980) (Blackmun, J., dissenting).  In this regard we point out that only 15 months before we decided <u>Riverside</u>, in <u>General Heat & Power Co. v. Diversified Mortgage Investors</u>, 552 F.2d 556, 557 n.1 (3d Cir. 1977), in a dictum in a case involving, as the district court held was true of Emerald Trust, a business trust, we indicated that "the citizenship of a trust is generally that of the trustee."  Thus, it was perfectly logical in <u>Riverside</u> to use the word "simply" to harmonize <u>Riverside</u> with <u>General Heat</u> as we presume that when we decided <u>Riverside</u> we were aware of <u>General Heat</u>.  But even if our reading of <u>Riverside</u> is not correct and in <u>Riverside</u> we intended to say that only the citizenship of the investors mattered, and thereby jettison the <u>General Heat</u> dictum, we would reach the result we do in this case.

We emphasize that in <u>Riverside</u> we had no need to use "simply" if the citizenship of the trustees was not to be examined.  Rather, we could have omitted "simply" and said "look to the citizenship of the [trust] investors and not that of the trustees."  But if we do not look at both then "simply" has no meaning. We believe that the district court in <u>Riverside</u> spoke only of the beneficiaries as diversity jurisdiction in that case turned on their citizenship.  In this regard we point out that the district court decided <u>Riverside</u> less than four months after we decided <u>General Heat</u>, see <u>Riverside Mem'l Mausoleum, Inc. v. UMET Trust</u>, 434 F. Supp. 58 (E.D. Pa. 1977), and we doubt that, dictum or not, the district court would have declined to follow <u>General Heat</u>.  On appeal, we agreed with the district court with respect to looking to the beneficiaries but it was at least implicit in our opinion that the trustees should be considered as well.

12

Supreme Court has decided Navarro Savings Association v. Lee, 446 U.S. 458, 100 S.Ct. 1779 (1980), and Carden v. Arkoma Associates, 494 U.S. 185, 110 S.Ct. 1015 (1990), which require us to reconsider Riverside as we have not considered the place of a trust's citizenship since these Supreme Court decisions.

In Navarro, eight individual trustees of a business trust, suing in their own names, brought an action for breach of contract. 446 U.S. at 459-60, 100 S.Ct. at 1781. The plaintiffs premised federal jurisdiction on diversity of citizenship, an allegation that the defendants disputed, as they claimed that the trust beneficiaries, and not the trustees, were the real parties to the controversy and the citizenship of the beneficiaries from whom they were not diverse should control. Thus, the question before the Court was whether "trustees of a business trust may invoke the diversity jurisdiction of the federal courts on the basis of their own citizenship, rather than that of the trust's beneficial shareholders." Id. at 458, 100 S.Ct. at 1780-81.

The Court looked at the role of the trustees and the shareholders with respect to the trust. Under the trust, the trustees had exclusive authority over the property. Id. at 459, 100 S.Ct. at 1781. Moreover, the declaration of trust "authorized the trustees to take legal title to trust assets, to invest those assets for the benefit of the shareholders, and to sue and be sued in their capacity as trustees." Id. at 464, 100 S.Ct. at 1784. In contrast, the shareholders did not have such authority. Id.

The Court found that "a trustee is a real party to the controversy for purposes of diversity jurisdiction when he possesses certain customary powers to hold, manage, and dispose of assets for the benefit of others," and "[t]he trustees in this case have such powers." Id. at 464, 100 S.Ct. at 1783-84. The Court concluded that "trustees who meet this standard [may] sue in their own right, without regard to the citizenship of the trust beneficiaries." Id. at 465-66, 100 S.Ct. at 1784.

Ten years later in Carden, the plaintiff, a limited partnership, brought a complaint concerning a contract dispute in a district court relying on diversity of citizenship for federal jurisdiction. 494 U.S. at 186, 110 S.Ct. at 1016. The Court rejected the limited partnership's attempt to extend a corporation's artificial-person treatment to the partnership for the purposes of determining citizenship, id. at 189, 110

13

S.Ct. at 1018, and further rejected the limited partnership's attempt to have the Court determine citizenship of the partnership "solely by reference to the citizenship of its general partners, without regard to the citizenship of its limited partners." Id. at 192, 110 S.Ct at 1019. The Court concluded that in a suit by or against an artificial entity, diversity of citizenship "depends on the citizenship of 'all the members.'" Id. at 195, 110 S.Ct. at 1021 (citation omitted). Carden distinguished Navarro, remarking that "Navarro had nothing to do with the citizenship of the 'trust,' since it was a suit by the trustees in their own names." Id. at 192-93, 110 S.Ct. at 1020.

Thus, in light of Navarro and Carden, the Supreme Court has established the following rules. In a suit by or against the individual trustees of a trust, where the trustees "possess[ ] certain customary powers to hold, manage and dispose of assets," their citizenship, and not that of the trust beneficiaries, is controlling for diversity of citizenship purposes. Navarro, 446 U.S. at 464-66, 100 S.Ct. at 1783-84. The rule, however, is different when an artificial entity sues or is sued in its own name. In that situation, because artificial entities, unlike corporations, are not "citizens" under 28 U.S.C. § 1332, diversity jurisdiction by or against an artificial entity depends on the citizenship of "all the members." Carden, 494 U.S. at 195, 110 S.Ct. at 1021.

2. The four alternatives.

In the light of Navarro and Carden and other cases that we have examined we conclude that a court might determine the citizenship of a trust by selecting among four possible tests: (a) look to the citizenship of the trustee only; (b) look to the citizenship of the beneficiary only; (c) look to the citizenship of either the trustee or the beneficiary depending on who is in control of the trust in the particular case; or (d) look to the citizenship of both the trustee and the beneficiary.[12]

(a) look to the citizenship of the trustee

_____

[12]We express the tests in the singular with respect to the trustee and beneficiary because we are treating this case as we find it with respect to Emerald Trust, i.e., one trustee and one beneficiary. Obviously if there are more trustees or beneficiaries then the test is applied to all the trustees and beneficiaries.

14

Navarro, though involving an action that the trustees themselves brought, could be understood as suggesting that a court should look to the citizenship of the trustee in determining the citizenship of a trust without regard to the citizenship of the beneficiary, so long as the trustee "possesses certain customary powers to hold, manage, and dispose of assets for the benefit of others." Navarro, 446 U.S. at 464, 100 S.Ct. at 1783. In the circumstances, it is not surprising that some courts of appeals, with citation to Navarro, have held that the "citizenship of a trust is that of the trustee." Hicklin Eng'g, L.C. v. Bartell, 439 F.3d 346, 348 (7th Cir. 2006); see also Johnson v. Columbia Props. Anchorage, LP, 437 F.3d 894, 899 (9th Cir. 2006) ("A trust has the citizenship of its trustee or trustees."); Indiana Gas Co. v. Home Ins. Co., 141 F.3d 314, 318 (7th Cir. 1998). Indeed, before Navarro, in a dictum in General Heat & Power Co. v. Diversified Mortgage Investors, 552 F.2d 556, 557 n.1 (3d Cir. 1977), we said "the citizenship of a trust is generally that of the trustee."

We are reluctant, however, to agree with those courts, or for that matter regard ourselves as confined by General Heat, as we do not join in those courts' reading of Navarro in creating this bright-line rule, and surely their opinions are inconsistent with Riverside. Moreover, we decided General Heat before Riverside and before the Supreme Court decided Navarro and Carden. Navarro simply does not say that the citizenship of a trustee determines the citizenship of a trust. After all, as the Court emphasized in Carden, in Navarro the trustees were suing in their own names and, as we already have recognized, "[t]he question before the Court . . . was whether 'trustees of a business trust may invoke the diversity jurisdiction of the federal courts on the basis of their own citizenship, rather than that of the trust's beneficial shareholders.'" Trent Realty Assocs. v. First Fed. Sav. & Loan Ass'n of Philadelphia, 657 F.2d 29, 32 (3d Cir. 1981) (quoting Navarro, 446 U.S. at 458, 100 S.Ct. at 1780-81).

In contrast to Navarro, in the above cases, as well as in this case, the question is what is the citizenship of an entity when the entity itself is a party to the action.[13] Navarro simply does not address that question as Carden made clear when it said that "Navarro had nothing to do with the citizenship of the 'trust,' since it was a suit by

_____

[13]In Hicklin and Johnson trusts were among the owners of the entities involved, either a limited liability company in Hicklin, 439 F.3d at 347, or a limited partnership in Johnson, 437 F.3d at 896-97.

15

the trustees in their own names." Carden, 494 U.S. at 192-93, 110 S.Ct at 1020. We are not at liberty to disregard this observation.

Additionally, the trustee-only rule in an action by the trust itself seems to contradict Carden because that case held that an "artificial entity," a term that we will treat as including a trust, should assume the citizenship of all of its "members." Id. at 195, 110 S.Ct. at 1026. The trustee-only rule may contravene Carden because it disregards the citizenship of the trust's beneficiary who may be in a position similar to that of the limited partners in a limited partnership.

(b) look to the citizenship of the beneficiary

The Court of Appeals for the Eleventh Circuit took the different approach that Carden made clear that the citizenship of the "members," who it believed were only the beneficiaries, determines the citizenship of a business trust. See Riley v. Merrill Lynch, Pierce, Fenner & Smith, Inc. 292 F.3d 1334, 1338 (11th Cir. 2002).[14] This alternative, though not inconsistent with Carden unless, of course, a trustee is a member of the trust, is not the best rule because in many cases the beneficiary-only rule may lead to an untoward result, as for example, would be the situation if a trust in which the beneficiary has delegated all control of the trust to the trustee brings the action. It seems to us that reliance only on the citizenship of the beneficiary in these circumstances would be inconsistent with the reasons justifying the existence of diversity of citizenship jurisdiction because in that situation it is logical to think that if the trust had a local advantage or faced a local prejudice it would be on the basis of the identification of

---

[14]Actually Riley arguably may not be inconsistent with Hicklin and Johnson as Riley involved a business trust and the trusts involved in Hicklin and Johnson appear to have been traditional express trusts. Though we do not distinguish between business trusts and traditional express trusts when determining citizenship, an argument can be made that there should be such a distinction. Yet we note that it might be thought that inasmuch as Navarro involved trustees of a business trust if there is a distinction between express and business trusts for citizenship purposes the results of the three cases would have been reversed. This anomaly only can reinforce our unwillingness to distinguish between business trusts and express trusts for citizenship purposes.

16

the trustee not the beneficiary.[15]

> (c) look to the citizenship of either the trustee or the beneficiary depending on who is in control of the trust in the particular case

The third alternative is a less definite, case-by-case rule. In this regard Wright & Miller in their well known treatise suggest that "[t]he citizenship of an active trustee, rather than that of the beneficiaries of the grantor, is decisive, but again a different result is reached with regard to a passive trustee who has only a naked legal title to the property." 13B Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 3606 (2d ed. 1984) (footnote omitted). The problem with this rule is that it places a great and unnecessary burden on both the litigants and the courts themselves. The Wright & Miller rule would require that in each case where a trust is a party and the plaintiff relies on the court's diversity of citizenship jurisdiction, the court would have to monitor jurisdictional discovery to the same extent that it monitors any discovery in the case, and make findings with respect to the roles of the trustee and beneficiary in the affairs of the trust, all in a case that might be dismissed, or, if removed from a state court, remanded to it.[16]

Considering the burdens created by a case-by-case approach, it is not surprising that some courts of appeals have "resisted efforts to base determinations of citizenship on functional considerations." May Dep't Stores Co. v. Fed. Ins. Co., 305 F.3d 597, 599 (7th Cir. 2002); see also Kuntz v. Lamar Corp., 385 F.3d 1177, 1183 (9th Cir. 2004) ("[J]urisdictional rules should be as simple as possible, so that the time of litigants and judges is not wasted deciding where a case should be brought and so that fully litigated cases are not set at

---

[15]It long has been recognized that the need for both the reality and the perception of impartial administration of justice is the reason justifying the existence of diversity of citizenship jurisdiction. See Bank of the U.S. v. Deveaux, 9 U.S. (5 Cranch) 61, 87, 3 L. Ed. 38 (1809).

[16]In fact, inasmuch, as the parties cannot by consent invest a federal court with subject matter jurisdiction, the Wright & Miller rule in a particular case in which the court's suspicions were aroused might require the same type of process in a case in which no party questioned the court's subject matter jurisdiction.

17

naught.") (quoting Cote v. Wadel, 796 F.2d 981, 983 (7th Cir. 1986)); Saadeh v. Farouki, 107 F.3d 52, 57 (D.C. Cir. 1997); SHR Ltd. P'ship v. Braun, 888 F.2d 455, 458-59 (6th Cir. 1989). Though we recognize that, as this case demonstrates, rejection of the Wright & Miller rule will not ensure that a diversity of citizenship determination will not require discovery and a hearing, we nevertheless would be reluctant to adopt a case-by-case test and thereby aggravate the burden on the litigants and the courts that we have identified.

(d) look to the citizenship of both the
trustee and the beneficiary

The final alternative is to look to the citizenship of both the trustee and the beneficiary in all cases in which a trust is a party. We consider that approach to be best for several reasons. First and foremost, this rule does not contradict the Supreme Court precedent in either Navarro and Carden, which, of course, we cannot do. Navarro is not implicated because it dealt with a situation in which the trustees brought the action in their own names, a situation different from that here in which the trust is the plaintiff. Moreover, the dual trustee-beneficiary rule does not offend Carden, a case we discuss at greater length below, because the dual approach asks a court to look at the citizenship of all of the "members," at least the beneficiary of the "artificial entity," and merely directs a court to look at the citizenship of the trustee as well.

The concern with respect to Carden is raised by treating that case as applying to a trust. In this regard we point out that, so far as we are aware, historically the term "members" has not been applied in the context of a trust. Nevertheless, applying Carden to a trust, as we shall explain below we do not see why a trust's "members" include only its beneficiary and not its trustee. Of course, if a trustee is a member of a trust then when Carden is applied to a trust, a court in determining its citizenship must consider the trustee's citizenship.

A second reason for adopting the dual trustee-beneficiary rule is that it obviates the possibility of an illogical outcome under a trustee or beneficiary-only approach in a case in which the trustee controls the trust and the beneficiary is merely passive, or vice versa. A third reason is that a bright-line rule is preferable to a case-by-case functional rule as it is the most efficient rule to utilize in determining whether a district court has subject matter jurisdiction.

18

Moreover, the dual rule approach best accommodates our "concerns of judicial economy and of due respect for the principles of federalism" when "matters of diversity jurisdiction are implicated." Carlsberg Res. Corp. v. Cambria Sav. & Loan Ass'n, 554 F.2d 1254, 1256 (3d Cir. 1977). In Carlsberg, we recognized that the extension of diversity jurisdiction

> would impose additional burdens on a federal judicial system which already strains to process cases that are necessarily lodged with it. Relaxation of diversity requirements, intentional or otherwise, inevitably will increase access to the federal courts by litigants now confined to state courts, thereby augmenting the volume of business of the federal tribunals. Such an occurrence also may postpone or even forestall the vindication of the rights of litigants–criminal and civil–who are properly in the federal courts.
>
> Even more serious would be the disservice rendered to the cardinal precepts of federalism . . . . By its very nature, the diversity jurisdiction of the federal courts interferes with the autonomy of state tribunals by diverting litigation, ordinarily handled by such courts, to federal forums. Although the rule of Erie R.R. v. Tompkins, [304 U.S. 64, 55 S.Ct. 817 (1938)] requiring that state law be applied in diversity cases, operates to ameliorate the dislocative impact of such diversion, the fact remains that diversity jurisdiction prevents the states from adjudicating and resolving important matters that they otherwise would handle. Since conflict resolution constitutes one of the core public functions of state government, the exercise of diversity jurisdiction necessarily encroaches, in some fashion, on the ability of the states to engage in this traditional activity.

Id. at 1256-57 (footnote omitted); see also City of Indianapolis v. Chase Nat'l Bank of N.Y., 314 U.S. 63, 76, 62 S.Ct. 15, 20 (1941) ("The dominant note in the successive enactments of Congress relating to diversity jurisdiction is one of jealous restriction, of avoiding offense to state sensitiveness, and of relieving the federal courts of the overwhelming burden of business that intrinsically belongs to the state courts in order to keep them from for their

19

distinctive federal business.") (internal quotation marks omitted). The comments that we made 30 years ago in Carlsberg with respect to the burdens on the federal courts now are true to an enhanced degree as it is a matter of common knowledge that there has been a massive increase in the quantity of litigation in the federal courts for the last 30 years, far outpacing the growth in the size of the federal judiciary.[17]

For the foregoing reasons, after considering Navarro and Carden, we reaffirm the rule that we adopted almost 30 years ago in Riverside that the citizenship of both the trustee and the beneficiary should control in determining the citizenship of a trust.[18]

In reaching our result we discuss Carden further because we recognize that that case might be understood as pointing to a beneficiary-only rule. Thus, it is important to emphasize that the issue before the Court in Carden was very different than the issue now before us. In Carden the issue was whether a court can look to the citizenship of less than all of the partners of a limited partnership to determine the partnership's citizenship. See Carden, 494 U.S. at 186,

---

[17]We realize that in cases dealing with a claim that a federal court should abstain from adjudicating a matter the Supreme Court has indicated that the district courts have a "virtually unflagging obligation . . . to exercise the jurisdiction given them." Colorado River Water Conservation Dist. v. United States, 424 U.S. 800, 817, 96 S.Ct. 1236, 1246 (1976). Moreover, Thermtron Products, Inc. v. Hermansdorfer, 423 U.S. 336, 96 S.Ct. 584 (1976), makes it clear that a district court may not remand a case properly removed to it from a state court to reduce its docket as that motivation is not a reason statutorily authorized for a remand. But these cases are not instructive on the very different question here which deals with determining whether the court has jurisdiction rather than whether it should exercise jurisdiction that it does have.

[18]Obviously, in view of our internal operating procedures, see Third Circuit IOP 9.1, if possible we should reach the result we do. Nevertheless, Navarro and Carden, which the Supreme Court decided after Riverside, have compelled us to reconsider the result we reached in that opinion. We hasten to add, however, that even in the absence of Riverside we would reach the result we do and, in the light of Navarro and Carden, would do so even if in Riverside we intended to hold that a court should look only to the beneficiary in determining a trust's citizenship.

20

110 S.Ct. at 1016 ("The question presented in this case is whether, in a suit brought by a limited partnership, the citizenship of the limited partners must be taken into account to determine diversity of citizenship among the parties."). In its holding, the Court "reject[ed] the contention that to determine, for diversity purposes, the citizenship of an artificial entity, the court may consult the citizenship of <u>less</u> than all of the entity's members." <u>Id.</u> at 195, 110 S.Ct. at 1021 (emphasis added).

Thus, it is clear that <u>Carden</u> tells us that a court must take into account not "less than all of the entity's members" when determining the citizenship of an artificial entity. Obviously, because the Court was looking at a partnership, which is owned by all the partners who under any theory are its only members, there could not be a need to look to any persons other than the partners and other than the partners there could be no one else to look to. But because <u>Carden</u> was dealing with a partnership, the Court did not deal with the entirely separate question of whether citizenship treatment may extend to individuals in addition to "members" with respect to other entities, and in any event, the Court did not consider the critical question of who is a "member" of such entities.

Our decision cannot be inconsistent with the holding in <u>Carden</u> as we are not concluding that a court may "consult the citizenship of less than all of the entity's members" in a citizenship determination. Rather, our opinion does not offend <u>Carden</u> no matter how one decides to define "member" in the context of a trust. If a trustee is not a "member," then rather than looking to "less than all of the entity's members," we are looking beyond that criterion because of the unique characteristics of a trustee, a situation that <u>Carden</u> does not address. On the other hand, if a trustee is a "member," then clearly we <u>must</u> look to his citizenship under <u>Carden</u>. In either circumstance, our holding is not inconsistent with <u>Carden</u>.

Moreover, assuming that <u>Carden</u> governs trusts and that a court should look only to the citizenship of a trust's "members" for the purposes of diversity of citizenship, we believe that a "member," a term left undefined by <u>Carden</u> which thus can be applied to different artificial entities in various ways, includes a trust's trustee as well as its beneficiary. We reach this conclusion in recognition of the law that a trustee is more than a mere manager of a trust inasmuch as title to a trust's assets is fragmented with its legal title being vested in the trustee and its equitable title being vested in the beneficiary. <u>See</u> <u>In re</u>

21

Columbia Gas Sys. Inc., 997 F.2d 1039, 1059 (3d Cir. 1993); Restatement (Second) of Trusts § 2 cmt. f (1959). A court should not ignore the legal interest held by the trustee as Congress itself has treated it as important as the equitable interest held by a beneficiary. Thus, in requiring that a judge must recuse himself in cases in which he has a "financial interest," Congress defines that term as including a legal or equitable ownership interest. See 28 U.S.C. § 455(b)(4),(d)(4). Overall, we see no reason why a trustee, who, in fact, has a significant ownership interest in the title to the assets of the trust in addition to management responsibilities, should not be deemed a "member" of a trust for purposes of determining the trust's citizenship in a diversity of citizenship case.[19] See also 11 U.S.C. § 541(a)(1) (with exceptions "all legal or equitable interests of the debtor" become property of the bankruptcy estate).

Finally in adopting the dual approach to determining citizenship of a trust we point out that our result is not inconsistent with Chapman v. Barney, 129 U.S. 677, 682, 9 S.Ct. 426, 428 (1889). That case concluded in a result that still is followed that corporations but not unincorporated business entities are citizens for purposes of diversity of citizenship. We are in no way acting inconsistently with that principle as we do not suggest that a trust should be assimilated to the status of a corporation for diversity purposes, a task that if it is to be done at all is for Congress and not for us. See Carden, 494 U.S. at 196-97, 110 S.Ct. at 1022.

---

[19]We point out that while our treatment of a trustee as a member of a trust is categorical and thus is not fact specific, a trustee is likely to be compensated from the assets of the trust, though in this case the trust agreement provided that the compensation of the trustee was to be an expense of Emerald Ltd., the beneficiary of the trust. Indeed, Florida law, pursuant to which Emerald Trust was established, provides that "[i]f the terms of a trust do not specify the trustee's compensation, a trustee is entitled to compensation that is reasonable under the circumstances." Fla. Stat. Ann. § 736.0708 (West 2007). New York law, the state of which defendants claim Emerald Ltd. and thus Emerald Trust are citizens, provides among numerous provisions dealing with a trustee's compensation, that "[a] trustee of an express trust shall be entitled to commissions and the allowance of his expenses and compensation . . . ." N.Y.C.P.L.R. § 8005 (McKinney 1981). By reason of a trustee's right to compensation for his services his legal interest in a trust is likely to be a beneficial interest and thus supports a conclusion that he is a member of the trust.

3. Application of the dual approach to this case

We now apply the trustee-beneficiary rule we have adopted to the facts here. The facts relating to the citizenship of the parties follows.[20] The plaintiff is Emerald Trust, the beneficiary of which is Emerald Ltd., a corporation incorporated in the British Virgin Islands with its principal place of business there as well.[21] Michael Houlis, a Florida citizen, is the trustee of Emerald Trust.

Defendant Reckson Operating Partnership, L.P., is a Delaware limited partnership whose sole general partner is Reckson Associates Realty Corp., a Maryland corporation with its principal place of

[20]We base our statements relating to the parties' citizenship on the record as it now exists. Therefore we do not preclude the district court from coming to contrary conclusions after full discovery and, if necessary, a hearing on the jurisdictional issue. We do observe, however, that inasmuch as Gaunt Parsippany Partners, 119 Cherry Hill Associates L.L.C., and 99 Cherry Hill Associates, L.P., did not exist at the time that Emerald Trust filed the complaint in this case, their citizenship might not be relevant for diversity purposes. See Midlantic Nat'l Bank v. Hansen, 48 F.3d 693, 696 (3d Cir. 1995) ("Whether diversity jurisdiction exists is determined by examining the citizenship of the parties at the time the complaint was filed."). We, however, do not decide this point but note that on the remand if the district court decides that without these three entities it has subject matter jurisdiction then it should do so. Moreover, we do not find it necessary in this opinion to explain the history of the four entities. We also point out that even though our references to the parties' citizenship are in the present tense, as Midlantic makes clear, the inquiry on remand should be on citizenship when the complaint was filed.

[21]As we explained above, defendants dispute that the British Virgin Islands is Emerald Ltd.'s principal place of business as they contend that New York is its principal place of business. Defendants raised this point in the district court, but the court denied their request for "jurisdictional discovery" as it believed that there was incontrovertible evidence demonstrating that Emerald Ltd.'s principal place of business was in the British Virgin Islands. Thus, defendants could not uncover facts to support their New York claim. In considering the question of Emerald Ltd.'s citizenship we note that defendants contend that it may be the alter ego of Toms and his, wife, Laurie Kraus. If necessary, the district court should consider this argument on remand.

business in New York. According to an affidavit filed in the post-trial jurisdictional inquiry proceedings, "among" its limited partners are "individuals <u>residing</u> in New York, Florida, Connecticut, Virginia, New Jersey, Maryland, Arizona, and Illinois." App. at 285 (emphasis added).[22]

Defendant Horseheads Commercial Development Partners, L.P., is a limited partnership whose sole general partner is Horseheads Commercial Development, Inc., a New York corporation. Its sole limited partner is Stratford Business Associates, L.P., a limited partnership with its general partner Cannon Street Properties, L.L.C. (itself a limited liability company with New Jersey citizens Wolff and Hoffman as its sole members), and with limited partners Wolff and Hoffman.

Thus, as the record now stands, plaintiff Emerald Trust appears to be a citizen of the British Virgin Islands (the citizenship of the beneficiary corporation) and Florida (the citizenship of its trustee). Defendant Reckson, a limited partnership, has a limited partner or partners that "resides or reside" in Florida[23] but we do not know the state or states of Reckson's citizenship inasmuch as the district court did not make a determination as to the <u>domicile</u> and thus the citizenship of its limited partners.[24] It does appear that defendant

---

[22]It appears that Reckson attempts to keep the identity of its limited partners confidential insofar as possible. Obviously, however, the district court must know who they are and where they are citizens and its need for that information will trump Reckson's policies.

[23]The citizenship of a partnership is determined by the citizenship of "all of the entity's members," i.e., the citizenship of both the general and limited partners. <u>Carden</u>, 494 U.S. at 195, 110 S.Ct. at 1021.

[24]Domicile is what matters for the purposes of determining citizenship; residence is different:

> A difference between the concepts of residence and domicile has long been recognized. A person is generally a resident of any state with which he has a well-settled connection . . . . 'Intent to remain indefinitely' in the State need not be shown in order to be considered a

Horseheads is not a citizen of the British Virgin Islands.

Clearly our uncertainty as to the citizenship of the parties requires us to remand this case to the district court to determine if it has diversity of citizenship jurisdiction. In this regard the citizenship of Reckson's limited partners may be pivotal as the trustee of Emerald Trust apparently is a citizen of Florida and Reckson also may be a citizen of Florida because more often than not an individual who resides in a state is a citizen of that state and Reckson has a limited partner or partners who reside in Florida. Therefore we have grave doubts as to whether the district court had subject matter jurisdiction in this case.[25]

---

resident of a state.

Martinez v. Bynum, 461 U.S. 321, 338-39, 103 S.Ct. 1839, 1847-48 (1983) (citations omitted). On the other hand,

> [c]itizenship is synonymous with domicile, and the domicile of an individual is his true, fixed and permanent home and place of habitation. It is the place to which, whenever he is absent, he has the intention of returning . . . . An individual can change domicile instantly. To do so, two things are required: [h]e must take up residence at the new domicile and he must intend to remain there.

McCann v. Newman Irrevocable Trust, 458 F.3d 281, 286 (3d Cir. 2006) (citations and internal quotation marks omitted).

[25]There could be a further complication here if, as now appears to be the case, Emerald Ltd. is the beneficiary of Emerald Trust and Emerald Ltd. is a citizen of the British Virgin Islands. In that case Emerald Trust would be a citizen of the British Virgin Islands. The complication would arise if any of the defendants are citizens or subjects of a foreign state in which event there would be citizens or subjects of a foreign state on both sides of the controversy. See Dresser Indus., Inc. v. Underwriters at Lloyd's of London, 106 F.3d 494 (3d Cir. 1997); Field v. Volkswagenwerk AG, 626 F.2d 293 (3d Cir. 1980). We, however, are not addressing that possibility because, as we said above, we can discern

## V. CONCLUSION

For the foregoing reasons we will vacate the judgment and orders from which the parties have appealed and cross-appealed, namely the order entering judgment of July 21, 2005, in favor of Emerald Trust, the order of August 30, 2004, denying Emerald Trust's motion for summary judgment, the order of October 29, 2004, denying Emerald Trust's motion for reargument and reconsideration with respect to the August 30, 2004 order, and the judgment and order of August 31, 2005, partially denying Emerald Trust's request for prejudgment interest. We will remand the matter to the district court which should allow full discovery on the issue of the parties' citizenship. Nothing that we have stated with respect to the facts relating to the parties' citizenship will bind the district court on the remand from making contrary factual findings predicated on the more complete record that will be developed on the remand.

At the conclusion of discovery the district court, at its discretion, may hold such hearing or hearings, if any, as it regards necessary to determine its jurisdiction, and shall make findings as to whether it has subject matter jurisdiction in this case. In making those findings it will apply the principles that we have set forth. It then either will reinstate the judgment and orders we have vacated or dismiss the action, depending upon whether it determines that it does or does not have jurisdiction. But nothing herein shall preclude the district court from modifying its judgment or orders in accordance with any procedure applicable under the Federal Rules of Civil Procedure. See Fed. R. Civ. P. 60. We do not retain jurisdiction so that any further appeals in this matter shall be from the reinstated judgment and orders, the order for dismissal to be entered on the remand, or such other judgments or orders as may be entered on the remand.[26] The parties will bear their own costs on this appeal.

---

nothing in the record that suggests that a defendant could be a citizen anywhere other than in the United States. See supra note 9. Nevertheless we are aware of that possibility and if it arises the district court may have to deal with it on remand.

[26]We have no reason at this time to consider whether Emerald Trust could appeal the order denying it summary judgment and the order denying reargument of the order denying summary judgment. We do state, however, that these orders might be moot in view of the outcome of the trial and the entry of the July 21, 2005 judgment. We mention this

point because we do not want to imply that the summary judgment orders are not moot and are appealable. Rather, we state no opinion on that point.