15-802-cv
Raymond Loubier Irrevocable Trust v. Noella Loubier

In the

# United States Court of Appeals
### For the Second Circuit

August Term, 2016

(Argued:  October 25, 2016     Decided:  June 1, 2017)

Docket No. 15-802-cv

RAYMOND LOUBIER IRREVOCABLE TRUST, NOELLA LOUBIER
IRREVOCABLE TRUST, ESTATE OF GERVAIS A. LOUBIER,

*Plaintiffs-Appellants*,

—v.—

NOELLA LOUBIER, RAYMOND LOUBIER REVOCABLE TRUST,
NOELLA LOUBIER REVOCABLE TRUST,

*Defendants-Appellees.*\*

---

\* The Clerk of Court is directed to amend the caption as set forth above.

1

Before:

LEVAL, SACK, RAGGI, *Circuit Judges.*

On appeal from a judgment of dismissal entered in the United States District Court for the District of Connecticut (Eginton, *J.*) based on the lack of subject matter jurisdiction, the parties dispute whether, for purposes of determining diversity, the citizenship of the party trusts is properly identified by reference only to that of their trustees or also to that of all beneficiaries. Because the plaintiff trusts are traditional common law fiduciary agreements, and, further, because they are not separate juridical entities under the relevant state law of Florida, we conclude that the citizenship of their trustees controls a diversity determination.

VACATED AND REMANDED.

EDDI Z. ZYKO, Esq., Middlebury, Connecticut, *for Plaintiffs-Appellants.*

HOWARD M. CAMERIK, Gray Robinson, P.A., Fort Lauderdale, Florida (Jeffrey P. Mueller, Day Pitney LLP, Hartford, Connecticut, *on the brief*), *for Defendants-Appellees.*

REENA RAGGI, *Circuit Judge*:

The parties in this action are involved in an inheritance dispute pertaining to the assets of the now deceased Raymond Loubier, as conveyed to various revocable and irrevocable trusts in his name and that of his wife Noella Loubier. Two of the Loubiers' irrevocable trusts, as well as a contingent trust beneficiary, Gervais A. Loubier, invoke diversity jurisdiction to sue Noella Loubier and two of the Loubiers' revocable trusts for alleged breach of fiduciary duty. Plaintiffs here appeal from a judgment entered in the United States District Court for the District of Connecticut (Warren W. Eginton, *Judge*) on March 3, 2015, dismissing the case for lack of subject matter jurisdiction in light of plaintiffs' failure to demonstrate complete diversity. *See* 28 U.S.C. § 1332. The district court's diversity determination was based on its understanding that Noella Loubier, a Florida citizen, is on both sides of the case caption because not only is she an individually named defendant and the trustee of the defendant revocable trusts, but also she was purportedly the trustee of the plaintiff Raymond Loubier Irrevocable Trust.

We need not here decide whether the presence of the same person, in two different capacities, on both sides of a case caption, defeats diversity because the challenged judgment here rests on a misapprehension as to the particular

3

irrevocable trusts named as plaintiffs. Plaintiffs bear some responsibility for confusion on this and other issues. Nevertheless, it is useful at the outset to clarify the identity of the party trusts.

The irrevocable trust agreements attached to the complaint are dated February 25, 2000, and name Roland Loubier as their sole trustee ("2000 Irrevocable Trust Agreements"). In an affidavit filed in support of dismissal, Noella Loubier stated that these 2000 Irrevocable Trust Agreements were supplanted by the Raymond Loubier Irrevocable Trust Agreement dated January 29, 2003, and the Noella Loubier Irrevocable Trust Agreement dated August 18, 2005, for both of which she is named trustee. In opposing dismissal, plaintiffs asserted that the Loubiers' 2000, 2003, and 2005 irrevocable trust agreements are distinct and that the intended party plaintiffs here are, indeed, the couple's 2000 irrevocable trusts. For purposes of this appeal, defendants accept plaintiffs' characterization of the 2000 Irrevocable Trust Agreements as "the intended and proper party plaintiffs," Appellees' Br. 4 n.2, and agree that the trustee of both these trusts is Roland Loubier, who appears to be a citizen of Canada.[1]

---

[1] Plaintiffs confuse this issue in their opening brief by identifying *Gervais* Loubier, a citizen of Connecticut, as the trustee of the 2000 Irrevocable Trust Agreements. But this appears to be a scrivener's error as plaintiffs' citations for

4

With the identity of the plaintiff trusts thus clarified, plaintiffs argue that they have established complete diversity because plaintiff Gervais Loubier is a citizen of Connecticut; the plaintiff trusts take the Canadian citizenship of their trustee, Roland Loubier; defendant Noella Loubier is a citizen of Florida; and the defendant revocable trusts of which she is the trustee take her Florida citizenship. Defendants disagree. They argue that the party trusts' citizenship is properly identified not only by their trustees but also by their beneficiaries, which here results in Florida and Connecticut citizens being on both sides of the case caption, as Noella Loubier and Gervais Loubier are direct or contingent beneficiaries of all four party trusts.

We consider the question of trust citizenship in light of the Supreme Court's recent decision in *Americold Realty Trust v. Conagra Foods, Inc.*, 136 S. Ct. 1012 (2016) (holding that, for diversity purposes, real estate investment trust ("REIT") organized under Maryland law for benefit of its shareholders takes its citizenship from all those shareholders). While *Americold* does not speak directly to the circumstances of this case, it does distinguish (1) traditional trusts establishing only fiduciary relationships and having no legal identity distinct

---

this statement, and the trust agreements themselves, make plain that *Roland* Loubier is the sole trustee. *See* J.A. 25, 90, 291–92.

5

from their trustees, from (2) the variety of unincorporated artificial entities to which states have applied the "trust" label, but which have little in common with traditional trusts. *See id.* at 1016. The REIT at issue in *Americold* was one of the latter entities. By contrast, the party trusts here derive from trust agreements establishing only traditional fiduciary relationships. Further, the trusts here at issue are not distinct legal entities under the relevant Florida state law. We conclude that legal proceedings involving such traditional trusts are effectively brought by or against their trustees and, thus, it is the trustees' citizenship, not that of beneficiaries, that matters for purposes of diversity.

Applying this legal conclusion to the record on appeal, we cannot confidently resolve the question of diversity because the citizenship of Roland Loubier, trustee of both plaintiff trusts, is not clearly established. In an affidavit filed in the district court, Roland Loubier provides his Canadian address, but nowhere states that he is, in fact, a citizen of Canada, much less that, in his capacity as trustee, he wishes to pursue this action. The omission is significant because if Roland Loubier were a United States citizen domiciled abroad, diversity would be defeated. *See Herrick Co. v. SCS Commc'ns, Inc.*, 251 F.3d 315, 322 (2d Cir. 2001) ("United States citizens domiciled abroad are neither citizens of any state of the United States nor citizens or subjects of a foreign state, so that

6

§ 1332(a) does not provide that the courts have [diversity] jurisdiction over a suit to which such persons are parties." (internal quotation marks omitted)). Thus, the case must be remanded for plaintiffs to furnish proper allegations, either in an amended complaint or by affidavit, as to the citizenship of Roland Loubier, the sole trustee of the 2000 Irrevocable Trusts.

Accordingly, we vacate the judgment of dismissal because it rests on a misapprehension as to the identity of the plaintiff irrevocable trusts, and we remand this case to the district court for it to reconsider subject matter jurisdiction in light of this opinion.

## I.    **Background**

### A.    The Plaintiff Irrevocable Trust Agreements

On February 25, 2000, Florida citizens Raymond and Noella Loubier respectively signed the plaintiff Irrevocable Trust Agreements bearing their names. Both agreements identify Raymond Loubier's brother Roland Loubier as sole trustee.

In their initial complaint, plaintiffs alleged that the purpose of the 2000 Irrevocable Trust Agreements was to compensate Raymond "Loubier['s] brothers, Roland, Paul, Reginald, Laurient, Martin, [and] Gervais" for "their material and essential contribution to the successful family lumber and

7

construction business . . . built in Florida." J.A. 9 (Compl. ¶ 5). The 2000 Irrevocable Trust Agreements do provide for Raymond and Noella Loubier, during their lifetimes, to make tax-free gifts, but set forth no obligation to do so and identify no intended donees.

Attorney memoranda dated March 1, 2000, and sent respectively to Raymond and Noella Loubier, and to trustee Roland Loubier, memorialize a further purpose of the 2000 Irrevocable Trust Agreements: the transfer of Raymond and Noella Loubier's insurance policies to the trustee so that, upon their deaths, proceeds can be paid to beneficiaries with minimal tax consequences.

Each of the Loubiers' 2000 Irrevocable Trust Agreements names the other spouse as primary beneficiary, with the trustee directed to make payments to that spouse according to the terms of separate trusts: a Family Trust and a Marital Trust. Only upon the death of both spouses, does each 2000 Irrevocable Trust Agreement instruct the trustee to make distributions of any remaining property entrusted to him under that agreement to some 24 persons—if then living—in stated percentages. Plaintiff Gervais Loubier is named as one of these

8

contingent beneficiaries, but his death after the filing of this appeal and while

Noella Loubier remains alive may have ended that status.[2]

B.      <u>The Defendant Revocable Trust Agreements</u>

On December 20, 1999, some two months before entering into the aforementioned 2000 Irrevocable Trust Agreements, Raymond and Noella Loubier each signed Revocable Trust Agreements naming him- or herself as both grantor and trustee of the agreement bearing his or her name, and naming his or her surviving spouse as successor trustee in the event of the grantor's death or inability to serve ("1999 Revocable Trust Agreements").[3] In the event the spouse cannot serve as successor trustee, each grantor appoints Roland Loubier and First

---

[2] Plaintiffs' counsel was granted leave to substitute the Estate of Gervais Loubier as a plaintiff-appellant. That substitution has no effect on our diversity analysis because "[i]t has long been the case that the jurisdiction of the court depends upon the state of things at the time of the action brought." *Grupo Dataflux v. Atlas Glob. Grp., L.P.*, 541 U.S. 567, 570 (2004) (internal quotation marks omitted). We express no views as to what claims the Estate of Gervais Loubier can pursue against defendants. As for claims made on behalf of the plaintiff trusts, for the reasons stated in this opinion, they can be pursued only by Roland Loubier, the trustee named in the 2000 Irrevocable Trust Agreements. These matters can be addressed by the parties on remand to the district court.

[3] Only Raymond Loubier's 1999 Revocable Trust Agreement is included in the record on appeal, but like the parties, we assume that Noella Loubier's 1999 Revocable Trust Agreement parallels that of her late husband.

9

Union National Bank to serve jointly as successor co-trustees. At present, Noella Loubier serves as trustee of both 1999 Revocable Trust Agreements.

While the record contains no contemporaneous legal memoranda as to the purpose of these revocable trust agreements, their terms suggest the Loubiers' intent to convey a significant amount of their assets to themselves "in trust." Thus, each 1999 Revocable Trust Agreement instructs the trustee to distribute to the respective grantor the net income from property transferred to the trustee under the agreement; to preserve the grantor's right to use real property placed in the trust as his or her permanent residence; to use transferred assets for the grantor's benefit in the event of his or her hospitalization, disability, need for assisted living, or incapacity; and to collect assets of the grantor upon, and to pay expenses associated with, the grantor's death. Each 1999 Revocable Trust Agreement also instructs the trustee to use separate trust entities, specifically, a Credit Shelter Trust and a Marital Trust, to make distributions to a surviving spouse so as to minimize tax obligations. Only upon the death of both spouses does each 1999 Revocable Trust Agreement instruct the successor trustee to make distributions to the same 24 persons and in the same percentages as identified in the subsequent 2000 Irrevocable Trust Agreements. Thus, until his own death,

10

Gervais Loubier was a contingent beneficiary of the defendant as well as the plaintiff trusts.

## C.    The Instant Action

On August 22, 2013, this action was filed in the name of Gervais Loubier and the plaintiff trusts against Noella Loubier and the defendant trusts for which she serves as trustee.   The original complaint alleges that Noella Loubier provided Gervais Loubier a "purported accounting" of the defendant Raymond Loubier 1999 Revocable Trust that reported total assets of $5 million, "which on information and belief is some 7–9 million dollars less than it should be."  J.A. 10 (Compl. ¶ 10).  The complaint further alleged that Noella Loubier "has amassed and retained for herself all the assets of said plaintiff Trusts . . . to the detriment of the plaintiffs."  *Id.* (Compl. ¶ 11).

Plaintiffs do not repeat these allegations in their amended complaint. There, they allege simply that, as trustee of the defendant trusts, Noella Loubier owes "the plaintiff"—presumably Gervais Loubier—a fiduciary duty to account; that Gervais Loubier has demanded an accounting, which Noella Loubier has refused; and that moneys may be due Gervais Loubier, the plaintiff trusts, and

the beneficiaries of those trusts, the amount of which cannot be determined without an accounting. *See id.* at 279–80.[4]

Thus, plaintiffs sought to compel (1) an accounting of the defendant 1999 Revocable Trusts, (2) payment to plaintiffs and trust beneficiaries of amounts that the accounting showed were due to them, and (3) appointment of the trustee of the plaintiff trusts as receiver for assets of the defendant trusts held by Noella Loubier. *See id.* at 281.[5]

Defendants moved to dismiss the amended complaint under Fed. R. Civ. P. 12(b)(1), (b)(2), for lack of personal and subject matter jurisdiction. The district

---

[4] The "Accounting" provision of the 1999 Revocable Trust Agreements states that "[u]pon the request of any *vested beneficiary*, when the fair market value of the assets held hereunder exceeds One Thousand Dollars ($1,000), Trustee shall render an account of receipts and disbursements at least annually to Grantor, if living; otherwise, Trustee shall render such an account to each adult income beneficiary." J.A. 247 (emphasis added). We express no view as to Gervais Loubier's entitlement to an accounting under this provision. Plaintiffs do not assert that the plaintiff trusts, which are not beneficiaries of the 1999 Revocable Trust Agreements, have any such right.

[5] In their amended complaint, plaintiffs stated that the defendant revocable trusts "should be deemed to be realigned as plaintiffs given their interest in an accounting proceeding." J.A. 279. Mindful perhaps that, under their trustee theory of trust citizenship, it might be difficult to demonstrate diversity jurisdiction if the defendant revocable trusts, for which Noella Loubier serves as trustee, were made plaintiffs at the same time that Noella Loubier remained as the sole defendant, plaintiffs withdrew their realignment request at oral argument and, instead, sought leave to amend the complaint again on remand.

12

court granted dismissal on the latter ground, assuming, as already noted, that the 2003 and 2005 Irrevocable Trust Agreements supplied or referenced by defendants, which name Noella Loubier as trustee, were the operative plaintiff trusts, and concluding therefrom that "[a]t least one of the plaintiff trusts shares Florida citizenship with defendants," thereby defeating complete diversity. J.A. 368. This timely appeal followed.

## II. Discussion

### A. Standard of Review

On appeal from a dismissal for lack of subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1), we review a district court's factual findings for clear error, *see Cortlandt St. Recovery Corp. v. Hellas Telecomms., S.À.R.L*, 790 F.3d 411, 417 (2d Cir. 2015), and its legal conclusions *de novo*, *see Haber v. United States*, 823 F.3d 746, 751 (2d Cir. 2016). In so doing, we accept the complaint's material allegations as true, and we draw all reasonable inferences in the plaintiffs' favor. *See Mantena v. Johnson*, 809 F.3d 721, 727 (2d Cir. 2015). We may also consider all extrinsic evidence proffered by the parties to the district court in support of their jurisdictional positions. *See Carter v. HealthPort Techs., LLC*, 822 F.3d 47, 57 (2d Cir. 2016).

13

To establish subject matter jurisdiction under 28 U.S.C. § 1332, as implicated here, plaintiffs bear the burden of making a preponderance showing, *inter alia*, of "'complete diversity,' *i.e.* all plaintiffs must be citizens of states diverse from those of all defendants." *Pennsylvania Pub. Sch. Emps.' Ret. Sys. v. Morgan Stanley & Co.*, 772 F.3d 111, 118 (2d Cir. 2014) (quoting *Exxon Mobil Corp. v. Allapattah Servs., Inc.*, 545 U.S. 546, 553 (2005)). There is no question that the named individual parties are of diverse citizenship. When the complaint was filed, plaintiff Gervais Loubier was a citizen of Connecticut and defendant Noella Loubier was a citizen of Florida. Thus, whether plaintiffs have demonstrated complete diversity depends on the citizenship of the party trusts.

B.     The Identity of the Plaintiff Trusts

As earlier observed, the parties agree that the district court's diversity ruling rests on a clear error of fact because the operative plaintiff trusts are those reflected in Raymond and Noella Loubier's 2000 Irrevocable Trust Agreements, not their 2003 or 2005 Agreements. In reviewing the challenged dismissal on this appeal, therefore, we look to the 2000 Irrevocable Trust Agreements and to their trustee, Roland Loubier, in deciding whether plaintiffs have established diversity jurisdiction.

14

C.    Trust Citizenship

1.    Supreme Court Precedent

"Despite over two centuries of federal litigation involving trusts, the method for determining a trust's citizenship [is] long unsettled and the subject of much debate." *Zoroastrian Ctr. & Darb-E-Mehr of Metro. Washington, D.C. v. Rustam Guiv Found. of N.Y.*, 822 F.3d 739, 748 (4th Cir. 2016). While this court has not conclusively decided how trust citizenship should be determined for purposes of diversity jurisdiction, three Supreme Court decisions are relevant to our task here: *Navarro Savings Association v. Lee*, 446 U.S. 458 (1980); *Carden v. Arkoma Associates*, 494 U.S. 185 (1990); and *Americold Realty Trust v. Conagra Foods, Inc.*, 136 S. Ct. 1012 (2016).

In *Navarro,* plaintiffs were trustees of a business trust organized under Massachusetts law. *See Navarro Sav. Ass'n v. Lee*, 446 U.S. at 459. The trust declaration authorized the trustees to hold title to real estate investments for the benefit of trust shareholders. *See id.* It further gave the trustees exclusive authority over this property, as well as over decisions to invest or to lend trust funds. *See id.* It specifically authorized the trustees to sue and to be sued either in the name of the trust or in their own names as trustees. *See id.* In their own names, the trustees sued Navarro Savings Association for breach of a loan

15

agreement that the trustees had entered into for the benefit of the trust. *See id.* The question before the Supreme Court was "whether the trustees of a business trust may invoke the diversity jurisdiction of the federal courts on the basis of their own citizenship"—which differed from that of the Texas defendant— "rather than that of the trust's beneficial shareholders"—a number of whom were Texas citizens. *Id.* at 459–60.

The Supreme Court concluded that the citizenship of the named plaintiff trustees, and not that of the trust's shareholders, controlled the diversity assessment in *Navarro. See id.* at 465. In so ruling, the Supreme Court reasoned that the plaintiff trustees were the real parties in interest to the controversy based on their possession of "certain customary powers to hold, manage, and dispose of assets, for the benefit of others." *Id.* at 464–65.[6]

---

[6] The sole *Navarro* dissenter, Justice Blackmun, urged that the business trust at issue, a creature of Massachusetts law, be viewed differently from traditional common law trusts. *See Navarro Sav. Ass'n v. Lee*, 446 U.S. at 467–69 & n.2 (quoting Restatement (Second) of Trusts § 1, cmt. b, p.4 (1959) ("The business trust is a special kind of business association and can best be dealt with in connection with other business associations.")). Trust shareholders in *Navarro* exercised significant control over trustees' actions by virtue of their right to elect trustees annually or to remove them from office, even without cause, by majority vote. Shareholder majority approval was also required for trustees to engage in any transaction involving more than 50% of trust assets. "Most significantly," in Justice Blackmun's view, shareholders had the power not only to amend the trust

Plaintiffs here argue that the trustees of the party trusts exercise comparable powers and, thus, even though plaintiffs sued in the names of the trusts rather than the trustees, it is the trustees' citizenship that should determine whether there is diversity jurisdiction.

Ten years after *Navarro*, in another diversity case, the Supreme Court considered how to determine the citizenship of a different artificial entity created by state law: a limited partnership. *See Carden v. Arkoma Assocs.*, 494 U.S. at 186. A five-member majority specifically declined to extend to limited partnerships the rule treating corporations as citizens of their states of incorporation. *See id.* at 195. It further declined to determine a limited partnership's citizenship by looking only to general, not limited, partners on the ground that only the former exercised control over the business and its related litigation. *See id.* at 192. Rather, the Court adhered to the "rule that diversity jurisdiction in a suit by or against the [artificial] entity depends on the citizenship of all the members." *Id.* at 195 (internal quotation marks omitted).

---

declaration, but also to "terminate the trust" entirely. *Id.* at 469. In these circumstances, he thought that the citizenship of the beneficial shareholders, not the trustees, should determine diversity jurisdiction. *See id.* at 476.

Insofar as Arkoma Associates relied on *Navarro* to urge otherwise, the Court was dismissive, observing that "*Navarro* had nothing to do with the citizenship of the 'trust'" at issue. *Id.* at 192–93. Rather, "it was a suit by the trustees in their own names," *id.* at 193, and thus presented "the quite separate question" of whether these trustees, who "were undoubted 'citizens' (viz., natural persons) were the real parties to the controversy," *id.* at 191.

Defendants rely on *Carden* to argue that, for purposes of diversity jurisdiction, the citizenship of any unincorporated entity that sues or is sued in its own name necessarily takes on the citizenship of all its members, which, in the case of trusts, is the citizenship of all named beneficiaries, both vested and contingent.

Courts applying *Navarro* and *Carden* to the question of a trust's citizenship for diversity purposes have reached different conclusions. The Seventh Circuit, as well as the Fifth, ruled that "[t]rusts take the citizenship of the trustees rather than of the beneficiaries." *Indiana Gas Co. v. Home Ins. Co.*, 141 F.3d 314, 318 (7th Cir. 1998); *see also Mullins v. TestAmerica, Inc.*, 564 F.3d 386, 397 & n.6 (5th Cir. 2009) (stating that district court had applied correct tests to determine citizenship of various entities, citing *Navarro* for principle that "citizenship of a trust is that of its trustee"). By contrast, the Third Circuit, "after considering *Navarro* and

18

*Carden*," ruled that "the citizenship of both the trustee and the beneficiary should control in determining the citizenship of a trust." *Emerald Inv'rs Tr. v. Gaunt Parsippany Partners*, 492 F.3d 192, 205 (3d Cir. 2007).

Most recently, the Supreme Court itself discussed *Carden* and *Navarro* in considering, for diversity purposes, "how to determine the citizenship of a 'real estate investment trust,' an inanimate creature of Maryland law." *Americold Realty Tr. v. Conagra Foods, Inc.*, 136 S. Ct. at 1014. In a unanimous decision, the Court concluded that one looked to the citizenship of the REIT's shareholders, as they were the "members" of that particular legal entity. *See id.* at 1016.

The reasoning informing this conclusion warrants attention. In *Americold*, the Supreme Court observed that it had originally recognized only human beings to be citizens for jurisdictional purposes. *See id.* at 1015. Thus, "if a 'mere legal entity'" were sued, the relevant citizens for purposes of diversity "were its 'members,' or the 'real persons who come into court' in the entity's name." *Id.* (quoting *Bank of United States v. Deveaux*, 9 U.S. (5 Cranch) 61, 86–91 (1809)). The Court later "carved a limited exception for corporations," which Congress codified to allow corporations to be considered citizens of their states of incorporation or principal places of business. *Id.; see* 28 U.S.C. § 1332(c) (1958). Neither Congress nor the Court, however, had ever expanded this grant of

19

citizenship to include other artificial entities, "such as joint-stock companies or limited partnerships." *Americold Realty Tr. v. Conagra Foods, Inc.*, 136 S. Ct. at 1015. For such entities, the Court had adhered to its "'oft-repeated rule that diversity jurisdiction in a suit by or against the entity depends on the citizenship of all its members.'" *Id.* (quoting *Carden v. Arkoma Assocs.*, 494 U.S. at 195–96) (alterations and internal quotation marks omitted).

The Supreme Court acknowledged that it had never expressly defined the term "members," but observed that it had equated a legal entity's members "with its owners or the several persons composing such association." *Id.* (internal quotation marks omitted). Thus, the Court had identified, with reference to state law, (1) "the members of a joint-stock company as its shareholders," (2) "the members of a partnership as its partners," and (3) "the members of a union as the workers affiliated with it." *Id.*

Applying these principles to the REIT at issue in *Americold*, the Court concluded that, as an unincorporated entity organized under Maryland law, the REIT possessed the citizenship of its members. *See id.* at 1016. Maryland law effectively defined those members as the REIT's shareholders. *See id.* (citing Md. Corp. & Assns. Code Ann. §§ 8-101(c), 8-102 (2014) (stating that REIT is "unincorporated business trust or association" in which property is held and

20

managed "for the benefit and profit of any person who may become a shareholder")). Indeed, other provisions of Maryland law appeared to place REIT shareholders "in the same position as the shareholders of a joint-stock company or the partners of a limited partnership." *Id.*

Rejecting an argument that *Navarro Savings Association v. Lee*, 446 U.S. at 458, compelled the conclusion "that anything called a 'trust' possesses the citizenship of its trustees alone," the Supreme Court reiterated *Carden*'s pronouncement that "'*Navarro* had nothing to do with the citizenship of [a] "trust."'" *Americold Realty Tr. v. Conagra Foods, Inc.*, 136 S. Ct. at 1016 (alteration in original) (quoting *Carden v. Arkoma Assocs.*, 494 U.S. at 192–93). "Rather, *Navarro* reaffirmed a separate rule that when a trustee files a lawsuit in *her* name, her jurisdictional citizenship is the State to which she belongs—as is true of any natural person." *Id*. (emphasis in original).

At the same time, however, the Court acknowledged that not all trusts were akin to the REIT before it. "Traditionally, a trust was not considered a distinct legal entity, but a fiduciary relationship between multiple people." *Id.*[7]

---

[7] This characterization of "traditional trusts" finds support in both the Second and Third Restatement of Trusts. *See* Restatement (Second) of Trusts § 2 (1959) (defining trust as "fiduciary relationship with respect to property, subjecting the

21

"Such a relationship was not a thing that could be haled into court;" rather, "legal proceedings involving a trust were brought by or against the trustees in their own name." *Id.* Thus, the Court stated, "[f]or a traditional trust, . . . there is no need to determine its membership, as would be true if the trust, as an entity, were sued." *Id.*

As our sister circuits have observed, the last quoted statement in *Americold* "may generate as many questions as it answers." *Zoroastrian Ctr. & Dab-E-Mehr v. Rustam Guiv Found.*, 822 F.3d at 749; *see Wang by & through Wong v. New Mighty U.S. Tr.*, 843 F.3d 487, 493 (D.C. Cir. 2016). Does it mean that there is never a need to determine the "membership" of a traditional trust because its citizenship is always that of its trustee? Or, does it mean that every time a trust is sued in its own name, its citizenship is the citizenship of all its members? Who are the members of a traditional trust that, as here, identifies both vested and contingent

---

person by whom the title to the property is held to equitable duties to deal with the property for the benefit of another person, which arises as a result of a manifestation to create it"); Restatement (Third) of Trusts § 2 (2003) (defining trust as "fiduciary relationship with respect to property, arising from a manifestation of intention to create that relationship and subjecting the person who holds title to the property to duties to deal with it for the benefit of charity or for one or more persons, at least one of whom is not the sole trustee").

beneficiaries?  *See Zoroastrian Ctr. & Dab-E-Mehr v. Rustam Guiv Found.*, 822 F.3d at 749 (posing similar questions).

While the Supreme Court did not speak directly to these matters in *Americold,* it followed its discussion of traditional trusts with the observation that state laws now apply the "'trust' label to a variety of unincorporated entities"—such as the REIT there at issue—that "have little in common" with traditional trusts.  *Americold Realty Tr. v. Conagra Foods, Inc.*, 136 S. Ct. at 1016.  Where state law applies a "trust" label to "a separate legal entity that itself can sue or be sued," that trust is subject to the "rule that it possesses the citizenship of all of its members."  *Id.* (internal quotation mark omitted).

From this reasoning, we conclude that the rule reiterated by the Supreme Court in *Americold* and *Carden*—ascribing to an unincorporated entity the citizenship of all its members—may apply to any number of trusts recognized in law as distinct juridical entities.  But it does not apply to a traditional trust that establishes only a fiduciary relationship and that cannot sue or be sued in its own right.  The distinction is evident in decisions from other circuits.  *See Wang by & through Wong v. New Mighty U.S. Tr.*, 843 F.3d at 494 [D.C. Cir.] ("[W]e believe *Americold* would not apply the *Carden* test to a traditional trust, as it is not an entity[with juridical status.]"); *cf. RTP LLC v. Orix Real Estate Capital, Inc.*, 827

F.3d 689, 691–92 (7th Cir. 2016) (concluding that retirement funds organized as trusts under state law but allowed to sue and to be sued in their own names have citizenships of their members). A number of district courts, including some within this circuit, have similarly read *Americold* to support the conclusion that a traditional trust's citizenship remains that of its trustee.[8]

---

[8] *See, e.g.*, *U.S. Bank Tr., N.A. v. Monroe*, No. 1:15-CV-1480 (LEK/DJS), 2017 WL 923326, at *4 (N.D.N.Y. Mar. 8, 2017) (holding that diversity citizenship of trust depends on type of trust at issue, with "traditional trust . . . tak[ing] the citizenship of its trustees without regard to the trust's beneficiaries" (internal quotation marks omitted)); *U.S. Bank, Nat'l Ass'n v. UBS Real Estate Sec. Inc.*, 205 F. Supp. 3d 386, 411 (S.D.N.Y. 2016) (observing that when "[t]rusts have no power to sue on their own behalves . . . only the Trustee's citizenship is relevant to th[e] diversity analysis"); *see also Algiers Dev. Dist. v. Vista Louisiana, LLC*, No. CV 16-16402, 2017 WL 121127, at *3 (E.D. La. Jan. 12, 2017) (reading *Americold* to hold that if traditional—rather than business—trust is party, "its citizenship is determined by the trustee's citizenship"); *Guillen v. Countrywide Home Loans, Inc.*, No. CV H-15-849, 2016 WL 7103908, at *4 (S.D. Tex. Dec. 6, 2016) (citing *Americold* for proposition that if trust is real party, "determine whether it is a 'traditional trust' where a court looks to the citizenship of the trustee, or whether it is a 'business trust' (unincorporated association) where a court looks to the citizenship of the trust's members to determine jurisdiction"); *Daisy Tr. v. JP Morgan Chase Bank*, No. 2:13-CV-00966-RCJ-VCF, 2016 WL 7107762, at *3–4 (D. Nev. Dec. 6, 2016) (stating that because "traditional trust . . . cannot sue or be sued," *Americold* signals that its citizenship for diversity purposes is that of its trustee); *Moore v. Ameriquest Mortg. Co.*, No. 4:16-CV-00380, 2016 WL 6159377, at *2 (E.D. Tex. Oct. 24, 2016) (reading *Americold* to instruct that "trust label is not dispositive on the issue of citizenship," and if "traditional trust is sued in its own name, only the trustee's citizenship matters for diversity purposes"); *LMP Ninth St. Real Estate, LLC v. U.S. Bank Nat'l Ass'n*, No. 8:16-CV-2463-T-33AEP, 2016 WL 6068302, at *2 (M.D. Fla. Oct. 17, 2016) (same); *Wells Fargo Bank, N.A. v. Transcon.*

Neither side here disputes that the party trusts—both those named as plaintiffs and those named as defendants—are traditional common law trusts, which created fiduciary relationships for purposes of estate planning. *See* Appellants' Supp. Br. 1; Appellees' Supp. Br. 2, 5. The terms of these trusts reinforce this conclusion. Unlike the business trusts in *Navarro*, the party trusts nowhere authorize suits in the name of either the trust or the trustees. *See Navarro Sav. Ass'n v. Lee*, 446 U.S. at 459. Nor do the party trusts here pertain to shareholders who hold "ownership interests" in trust property and who have "votes in the trust by virtue of their shares of beneficial interest," *Americold Realty Tr. v. Conagra Foods, Inc.*, 136 S. Ct. at 1016 (internal quotation marks omitted). The party trusts here have vested and contingent beneficiaries with no present ownership interest in trust property and no power over the trusts' administration, disbursements, or investments. *Cf. Navarro Sav. Ass'n v. Lee*, 446 U.S. at 469, 472 (Blackmun, J., dissenting) (noting that shareholders of business trust had right to elect and to remove trustees and to approve transactions involving more than 50% of trust assets). While the fiduciary relationship established by the plaintiff trusts allow vested beneficiaries to demand

*Realty Inv'rs, Inc.*, No. 3:14-CV-3565-BN, 2016 WL 3570648, at *3 (N.D. Tex. July 1, 2016) (same).

accountings from and even to sue the trustees, the trusts themselves are not entities that can be sued except through their trustees. Thus, for these traditional trusts, it is the citizenship of the trustees holding the legal right to sue on behalf of the trusts, not that of beneficiaries, that is relevant to jurisdiction. *See Wang by & through Wong v. New Mighty U.S. Tr.*, 843 F.3d at 494 n.13 (citing *Bonnafee v. Williams*, 44 U.S. (3 How.) 574, 577 (1845) (holding that where citizenships of parties confers jurisdiction, and legal right to sue is in plaintiff, court "will not inquire into the residence of those who may have an equitable interest in the claim")).

To the extent *Americold*'s contrary conclusion as to the REIT there at issue was informed by Maryland state law recognizing such trusts as distinct legal entities capable of suing in their own names, plaintiffs make no such comparable state law showing with respect to the traditional trusts here. Indeed, Florida law specifically incorporates the common law of trusts, which states that a traditional trust "is not a legal entity . . . capable of legal action on its own behalf." Restatement (Second) of Trusts § 2 (1957); *see* Fla. Stat. § 736.0106 (providing for "common law of trusts" to "supplement this code"). Rather the common law tasks the trustee with bringing suit on behalf of a trust. *See* Restatement (Second) of Trusts § 177 cmt. a ("If a third person commits a tort with respect to

26

the trust property, it is the duty of the trustee to take reasonable steps to compel

him to redress the tort."); Austin Wakeman Scott et al., *Scott and Ascher on Trusts*

§ 17.9 (5th ed. 2007) ("Ordinarily, a trustee must take reasonable steps to enforce

all claims held in trust.").

Florida follows this rule, both when a trustee initiates claims on behalf of

the trust, s*ee* Fla. Stat. § 736.0811 (stating that trustee must take reasonable steps

to enforce claims of trust), and when he defends against them, *see First Union*

*Nat'l Bank v. Jones*, 768 So. 2d 1213, 1215 (Fla. Dist. Ct. App. 2000) (stating that,

under Florida law, trustee is legal entity who is sued when action is brought

against trust). Thus, although the state court in *First Union* noted that the action

there was filed against "the trustee, not the trust," that statement does not

approve actions against the trust in its own name. *Id*. In the next sentence, the

court made clear that "the trustee is merely the legal entity who is sued when an

action is brought against the trust." *Id.* (internal quotation marks omitted).[9]

---

[9] Florida Statute § 736.1014, entitled "Limitations on actions against certain trusts," is not to the contrary. After identifying certain limitations, *see id.* § 736.1014(1), the statute states: "[t]his section does not preclude a direct action against a trust described in § 733.707(3), the trustee of the trust, or a beneficiary of the trust that is not dependent on the individual liability of the settlor," *id.* § 736.1014(2). We do not understand this provision to recognize, much less authorize, actions against trusts in their own names. By identifying actions

In sum, because the party trusts here are not organized according to state law as distinct juridical entities but, rather, are traditional trusts, establishing only fiduciary relationships, they are incapable of being haled into court except through their trustees. Thus, it is the trustees' citizenship that must determine diversity, not the citizenship of trust beneficiaries.

In urging otherwise, defendants argue that "[t]he essence of *Americold* is that in a trust case, diversity analysis turns upon whether the trusts or the trustees are the named part[ies]." Appellees' Supp. Br. 4. Thus, they maintain that it matters not that the party trusts are traditional trusts, and to the extent they sued or were sued in their own names, they "bear the citizenship of each and all of their members, thus undermining diversity." *Id.* at 2.

We are not persuaded. Indeed, the rule defendants urge would only encourage artful pleading if, in traditional trust cases, a party thought it could

_____

against trusts, as distinct from actions against trustees, the statute simply acknowledges that a trustee can be sued in his own capacity as distinct from the trust, *e.g.*, for breach of his fiduciary duties. But nothing in § 736.1014 indicates that in a direct action against the trust, the trust itself can be named as a party rather than its trustee. Indeed, Florida's express incorporation of the law of trusts resolves any ambiguity in § 736.1014 in favor of Florida trusts being sued only through their trustees. *See id.* § 736.0106.

28

create or defeat diversity jurisdiction to its advantage depending on whether it identified a trust or its trustee as a party to the action.

In cases involving traditional trusts, and absent anything to the contrary in either the trust instruments or state law, a party does not really have the option of suing either the trust in its own name or its trustee. The action can be maintained only against the trustee. We do not understand *Americold* to hold that where a traditional trust is mistakenly identified as a party even though, by its nature, it can only sue or be sued in the name of its trustee, diversity jurisdiction is properly identified by reference to persons other than the trustee. It is precisely because traditional trusts cannot sue or be sued except through their trustees that the named party trusts must be deemed only proxies for their trustees and, thus, it is the trustees' citizenship that must inform any diversity determination.

Here, the plaintiffs are citizens of Connecticut (Gervais Loubier) and possibly Canada (Roland Loubier, the trustee pursuant to the two 2000 Irrevocable Trust Agreements). Defendants are all citizens of Florida (Noella Loubier, individually and as trustee under the two 1999 Revocable Trust Agreements). If an affidavit or an amended complaint is provided by plaintiffs attesting that Roland Loubier is a citizen of Canada, or of any state other than

29

Florida, then complete diversity would be alleged. But because we cannot reach that conclusion ourselves on the record before us, we do not reverse the challenged judgment but, rather, vacate and remand for the district court to pursue Roland Loubier's citizenship further consistent with this opinion.

## III.    Conclusion

To summarize, we conclude as follows:

1.    A clear error of fact as to the identity of the plaintiff trusts requires vacatur of the judgment of dismissal and remand.

2.    The four party trusts in this case have no distinct juridical identity allowing them to sue or to be sued in their own names. Rather, each is a traditional trust, establishing a mere fiduciary relationship and, as such, incapable of suing or being sued in its own name.

3.    Because the party trusts can only sue or be sued in the names of their trustees, pleadings in the names of the trusts themselves do not require that these parties' citizenship, for purposes of diversity, be determined by reference to all their members. *Cf. Americold Realty Tr. v. Conagra Foods, Inc.*, 136 S. Ct. 1012 (2016); *Carden v. Arkoma Assocs.*, 494 U.S. 185 (1990). Rather, these traditional trusts'

citizenship is that of their respective trustees. *See generally Americold Realty Tr. v. Conagra Foods, Inc.*, 136 S. Ct. at 1016.

4. If, as the record suggests, the plaintiffs are citizens of Connecticut and Canada, while defendants are all citizens of Florida, diversity is complete. Nevertheless, because trustee Roland Loubier's Canadian citizenship is only suggested, not demonstrated, in the record, further inquiry is required on remand conclusively to determine diversity.[10]

Accordingly, the judgment of dismissal for lack of subject matter jurisdiction is VACATED and the case is REMANDED for further proceedings consistent with this opinion.

---

[10] This appeal did not present questions as to personal jurisdiction or standing and, thus, reaches no conclusion that would preclude district court consideration of any such issues as might arise on remand.