**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

JOAN DEMAREST,
  *Plaintiff-Appellant*,

v.

HSBC BANK USA, N.A., as Trustee
for the registered holders of Nomura
Home Equity Loan, Inc., Asset-
Backed Certificates, Series 2006-
HE2, incorrectly sued herein as
HSBC Bank USA, N.A.; OCWEN
LOAN SERVICING, LLC; MORTGAGE
ELECTRONIC REGISTRATION
SYSTEMS, INC., incorrectly sued
herein as Mortgage Electronic
Registration Systems; WESTERN
PROGRESSIVE, LLC; DOES, 1–10,
inclusive,
  *Defendants-Appellees.*

No. 17-56432

D.C. No.
2:16-cv-05088-
AB-E

OPINION

Appeal from the United States District Court
for the Central District of California
André Birotte Jr., District Judge, Presiding

Argued and Submitted March 6, 2019
Pasadena, California

Filed April 8, 2019

Before: FERDINAND F. FERNANDEZ and MILAN D. SMITH, JR., Circuit Judges, and DANA L. CHRISTENSEN,[*] Chief District Judge.

Opinion by Judge Milan D. Smith, Jr.

_____

## SUMMARY[**]

_____

### Diversity Jurisdiction

The panel affirmed the district court's exercise of diversity jurisdiction over an action stemming from the foreclosure of plaintiff's property.

Plaintiff's mortgage loan was securitized and the deed of trust assigned to HSBC Bank USA N.A., as trustee for a trust. Defendants removed the action to federal court based on diversity jurisdiction.

The panel held that the Supreme Court's decision in *Americold Realty Trust v. ConAgra Foods, Inc.*, 136 S. Ct. 1012 (2016), did not upset the holding in *Navarro Ass'n v. Lee*, 446 U.S. 458, 458 (1980) (holding that "a trustee is a real party to the controversy for purposes of diversity jurisdiction when he possesses certain customary powers to hold, manage, and dispose of assets for the benefit of others"), nor other precedent where, as here, HSBC—the

_____

[*] The Honorable Dana L. Christensen, Chief United States District Judge for the District of Montana, sitting by designation.

[**] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

trustee of a traditional trust—was sued in its own name. The panel concluded that because HSBC and the other defendants were not, like plaintiff, citizens of California, there was complete diversity, and the district court properly exercised diversity jurisdiction.

## COUNSEL

Richard Lawrence Antognini (argued), Law Office of Richard L. Antognini, Grass Valley, California, for Plaintiff-Appellant.

Emilie K. Edling (argued) and Robert W. Norman Jr., Houser & Allison APC, Portland, Oregon, for Defendants-Appellees.

## OPINION

M. SMITH, Circuit Judge:

Plaintiff-Appellant Joan Demarest initiated an action in state court stemming from the foreclosure of her property. The defendants removed the action to federal district court based on diversity jurisdiction. The district court granted the defendants' motion for summary judgment and entered final judgment.

On appeal, Demarest challenges for the first time the district court's subject matter jurisdiction over the action. She argues that the Supreme Court's decision in *Americold Realty Trust v. ConAgra Foods, Inc.*, 136 S. Ct. 1012 (2016), changed the law for determining the citizenship of a trust in such a way that complete diversity of citizenship might not

have existed in this case. We hold that prior authority regarding a traditional trust's citizenship still controls, and conclude that the district court properly exercised subject matter jurisdiction.

## FACTUAL AND PROCEDURAL BACKGROUND

Demarest filed the underlying complaint in this case in Los Angeles County Superior Court on May 27, 2016, naming as defendants HSBC Bank USA N.A. (HSBC), Ocwen Loan Servicing, LLC (Ocwen), Western Progressive, LLC (Western Progressive), and Mortgage Electronic Registration Systems, Inc. (MERS) (collectively, Defendants). The dispute concerned a loan Demarest had taken out on her West Hills, California home in 2005; the loan's promissory note and deed of trust were purportedly "pooled into a securitized trust labeled NORMA [sic] HOME EQUITY LOAN, INC., ASSET-BACKED CERTIFICATES, SERIES 2006-HE2 . . ." Demarest alleged that HSBC acted as trustee for this investment trust.

In fact, Demarest's loan had been securitized and the deed of trust assigned to HSBC, as trustee for the Registered Holders of Nomura Home Equity Loan, Inc., Asset-Backed Certificates, Series 2006-HE2 (the Trust). The Trust was governed by a contract entitled "Pooling and Servicing Agreement Dated as of April 1, 2006" (the Agreement), entered into between HSBC and various other parties. Among other things, the Agreement established the Trust, enumerated its assets, and appointed HSBC as trustee, and it described the Trust as a common law trust governed by New York law. Under the Agreement, all "right, title and interest" in the assets of the Trust were conveyed to the "Trustee [HSBC] for the use and benefit of the Certificateholders," and the trustee was given the power to hold the Trust's assets, sue in its own name, transact the

Trust's business, terminate servicers, and engage in other necessary activities.

In her complaint (which she filed following her default on the loan and multiple initial actions aimed at combatting the foreclosure of her property), Demarest asserted various causes of action under California law, including wrongful foreclosure. Defendants removed the case to the district court. The notice of removal specifically stated that it was filed on the behalf of, among others, "HSBC Bank USA, N.A., as Trustee for the registered holders of Nomura Home Equity Loan, Inc., Asset-Backed Certificates, Series 2006-HE2 . . . incorrectly sued herein as HSBC Bank USA N.A." Diversity jurisdiction pursuant to 28 U.S.C. § 1332 was the only basis for federal jurisdiction claimed in the notice. It asserted that Demarest was a citizen of California, Ocwen was a citizen of Florida and Georgia, MERS was a citizen of Delaware and Virginia, and Western Progressive was a nominal defendant and was therefore disregarded for diversity purposes. As for HSBC, the notice stated,

> HSBC is a national banking association organized under the laws of the United States with its main office in McLean, Virginia. . . . Since its main office is located in Virginia, HSBC is a citizen of Virginia for diversity purposes. At the present time and at the commencement of this action, HSBC is not a citizen of California.

(citation omitted). Given that no Defendant was, like Demarest, a citizen of California, the notice concluded that diversity jurisdiction was established, and that removal was proper.

After the district court dismissed MERS from the action through a motion for judgment on the pleadings, the remaining Defendants moved for summary judgment. The district court granted the motion and entered final judgment for Defendants. This timely appeal followed.

## STANDARD OF REVIEW AND JURISDICTION

"We review de novo a district court's determination that diversity jurisdiction exists." *Dep't of Fair Emp't & Hous. v. Lucent Techs., Inc.*, 642 F.3d 728, 736 (9th Cir. 2011) (quoting *Kroske v. U.S. Bank Corp.*, 432 F.3d 976, 979 (9th Cir. 2005)). We have jurisdiction pursuant to 28 U.S.C. § 1291.

## ANALYSIS

Demarest does not contest the district court's summary judgment decision on appeal. Instead, she challenges, for the first time, the court's subject matter jurisdiction over the action.

## I. Challenging Jurisdiction on Appeal

Federal subject matter jurisdiction—specifically, diversity jurisdiction—exists where an action is between "citizens of different States" and "the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs." *Id.* § 1332(a). It requires "complete diversity" of citizenship, meaning that "the citizenship of each plaintiff is diverse from the citizenship of each defendant." *Caterpillar Inc. v. Lewis*, 519 U.S. 61, 68 (1996).

A defendant may remove to federal court "any civil action brought in a State court of which the district courts of the United States have original jurisdiction." 28 U.S.C.

§ 1441(a). Although "[p]rocedural defects in the removal of an action may be waived by the failure to make a timely objection before the case proceeds to the merits," defects pertaining to "the subject matter jurisdiction of the court cannot be waived and may be raised at any time." *O'Halloran v. Univ. of Wash.*, 856 F.2d 1375, 1379 (9th Cir. 1988) (quoting *Libhart v. Santa Monica Dairy Co.*, 592 F.2d 1062, 1065 (9th Cir. 1979)). Therefore, where, as here, a district court disposes of an action on the merits and an appellant then challenges jurisdiction for the first time, "the relevant jurisdictional question on [] appeal . . . is 'not whether the case was properly removed, but whether the federal district court would have had original jurisdiction in the case had it been filed in that court.'" *Aradia Women's Health Ctr. v. Operation Rescue*, 929 F.2d 530, 534 (9th Cir. 1991) (quoting *Grubbs v. Gen. Elec. Credit Corp.*, 405 U.S. 699, 702 (1972)). Accordingly, we must determine whether the district court would have had diversity jurisdiction if Demarest had originally filed her case in federal court.[1]

## II. Citizenship of a Trust

Demarest contends that Defendants failed to establish diversity jurisdiction because, following the Supreme Court's decision in *Americold*, they were required to demonstrate the citizenship of the Trust's investors, and could not simply rely on the citizenship of HSBC as its trustee. To address this argument, we briefly consider the

---

[1] Defendants suggest that the district court also retained federal question jurisdiction over this action, but because we conclude that the court properly exercised diversity jurisdiction, we need not address this alternative theory.

Court's treatment of trust citizenship in *Americold* and two other pertinent decisions.

Decades ago, in *Navarro Savings Ass'n v. Lee*, the Supreme Court addressed "whether the trustees of a business trust may invoke the diversity jurisdiction of the federal courts on the basis of their own citizenship, rather than that of the trust's beneficial shareholders." 446 U.S. 458, 458 (1980). There, the plaintiffs were eight trustees of a Massachusetts trust who sued in their own names, and the defendant disputed the existence of complete diversity on the ground that, because the trust beneficiaries rather than the trustees were the real parties in controversy, the citizenships of the former ought to have controlled. *Id.* at 459–60. The Court reaffirmed the proposition that "a trustee is a real party to the controversy for purposes of diversity jurisdiction when he possesses certain customary powers to hold, manage, and dispose of assets for the benefit of others," concluding, "For more than 150 years, the law has permitted trustees who meet this standard to sue in their own right, without regard to the citizenship of the trust beneficiaries. We find no reason to forsake that principle today." *Id.* at 464–66.

Ten years later, in *Carden v. Arkoma Associates*, the Court addressed the related issue of "whether, in a suit brought by a limited partnership, the citizenship of the limited partners must be taken into account to determine diversity of citizenship among the parties." 494 U.S. 185, 186 (1990). It held that "diversity jurisdiction in a suit by or against the [limited partnership] entity depends on the citizenship of 'all the members.'" *Id.* at 195–96 (quoting *Chapman v. Barney*, 129 U.S. 677, 682 (1889)). Notably, the Court also determined that *Navarro* was consistent with this rule, because that case, unlike *Carden*, "did not involve the question whether a party that is an artificial entity other

than a corporation can be considered a 'citizen' of a State, but the quite separate question whether parties that were undoubted 'citizens' (viz., natural persons) were the real parties to the controversy." *Id.* at 191. It continued,

> [W]e did indeed discuss the characteristics of a Massachusetts business trust—not at all, however, for the purpose of determining whether the trust had attributes making it a "citizen," but only for the purpose of establishing that the respondents were "active trustees whose control over the assets held in their names is real and substantial," thereby bringing them under the rule, "more than 150 years" old, which permits such trustees "to sue in their own right, without regard to the citizenship of the trust beneficiaries." *Navarro*, in short, has nothing to do with the *Chapman* question, except that it makes available to respondent the argument by analogy that, just as business reality is taken into account for purposes of determining whether a trustee is the real party to the controversy, so also it should be taken into account for purposes of determining whether an artificial entity is a citizen.

*Id.* at 191–92 (citation omitted) (quoting *Navarro*, 446 U.S. at 465–66).

Although "[c]ourts applying *Navarro* and *Carden* to the question of a trust's citizenship for diversity purposes have reached different conclusions," *Raymond Loubier Irrevocable Tr. v. Loubier*, 858 F.3d 719, 727 (2d Cir. 2017), we have held that "[a] trust has the citizenship of its trustee

or trustees." *Johnson v. Columbia Props. Anchorage, LP*, 437 F.3d 894, 899 (9th Cir. 2006); *see also Mullins v. TestAmerica, Inc.*, 564 F.3d 386, 397 & n.6 (5th Cir. 2009) (citing *Navarro* for the proposition that the "citizenship of a trust is that of its trustee"); *Ind. Gas Co. v. Home Ins. Co.*, 141 F.3d 314, 318 (7th Cir. 1998) ("Trusts take the citizenship of the trustees rather than of the beneficiaries.").[2]

In 2016, the Supreme Court decided *Americold*, in which it addressed "how to determine the citizenship of a 'real estate investment trust,' an inanimate creature of Maryland law," and concluded that "[w]hile humans and corporations can assert their own citizenship, other entities take the citizenship of their members." 136 S. Ct. at 1014. In so deciding, the Court noted that under Maryland law, a "real estate investment trust" is "not a corporation," but is instead "an 'unincorporated business trust or association' in which property is held and managed 'for the benefit and profit of any person who may become a shareholder.'" *Id.* at 1015–16 (quoting Md. Code Ann. Corps. & Ass'ns § 8-101(c)). The Court determined that the real estate investment trust's "shareholders appear to be in the same position as the shareholders of a joint-stock company or the partners of a limited partnership—both of whom we viewed as members of their relevant entities," and "therefore conclude[d] that for purposes of diversity jurisdiction, [the real estate investment trust's] members include its shareholders." *Id.*

---

[2] By contrast, the Third Circuit, "after considering *Navarro* and *Carden*, [] reaffirm[ed] the rule . . . that the citizenship of both the trustee *and* the beneficiary should control in determining the citizenship of a trust." *Emerald Inv'rs Tr. v. Gaunt Parsippany Partners*, 492 F.3d 192, 205 (3d Cir. 2007) (emphasis added).

In so ruling, the Court did *not* overturn *Navarro*, but instead distinguished it:

> As we have reminded litigants before . . . "*Navarro* had nothing to do with the citizenship of [a] 'trust.'" Rather, *Navarro* reaffirmed a separate rule that when a trustee files a lawsuit in *her* name, her jurisdictional citizenship is the State to which she belongs—as is true of any natural person. This rule coexists with our discussion above that when an artificial entity is sued in *its* name, it takes the citizenship of each of its members.

*Id.* (citations omitted) (quoting *Carden*, 494 U.S. at 192–93). But it also acknowledged that "confusion regarding the citizenship of a trust is understandable and widely shared," and opined that "[t]he confusion can be explained, perhaps, by tradition." *Id*.

> Traditionally, a trust was not considered a distinct legal entity, but a "fiduciary relationship" between multiple people. Such a relationship was not a thing that could be haled into court; legal proceedings involving a trust were brought by or against the trustees in their own name. And when a trustee files a lawsuit or is sued in her own name, her citizenship is all that matters for diversity purposes. For a traditional trust, therefore, there is no need to determine its membership, as would be true if the trust, as an entity, were sued.

*Id.* (citations omitted) (quoting *Klein v. Bryer*, 177 A.2d 412, 413 (Md. 1962)).  The Court further noted that many states "have applied the 'trust' label to a variety of unincorporated entities that have little in common with this traditional template"—such as Maryland's "real estate investment trust," which is a separate legal entity that "itself can sue or be sued."  *Id*.  For such unincorporated entities, the Court repeated that citizenship is determined based on the citizenships of its members, and accordingly "decline[d] to apply the same rule to an unincorporated entity sued in its organizational name that applies to a human trustee sued in her personal name."  *Id.* at 1016–17.

## III.    Application to This Case

Although Demarest suggests that *Americold* constituted a sea change in how courts determine the citizenship of a trust, we do not find the decision to be quite so momentous. Indeed, the Court clearly rearticulated that which we already knew: "when a trustee files a lawsuit or is sued in her own name, her citizenship is all that matters for diversity purposes."  *Americold*, 136 S. Ct. at 1016 (citing *Navarro*, 446 U.S. at 462–66).

Here, HSBC—the trustee—was sued in its own name. Demarest's complaint named "HSBC BANK USA N.A." as a defendant, and did not mention the Trust either in the caption or in the complaint's list of defendants.  Therefore, *Americold* holds that, because HSBC as trustee was "sued in [its] own name, [its] citizenship is all that matters for diversity purposes."  *Id*.  "[A] national bank . . . is a citizen of the State in which its main office, as set forth in its articles of association, is located."  *Wachovia Bank v. Schmidt*, 546 U.S. 303, 307 (2006).  It is undisputed that HSBC is a national banking association with its main office in McLean, Virginia.  Thus, HSBC is a citizen of Virginia and Demarest

is a citizen of California. The parties were therefore completely diverse, and the district court properly exercised diversity jurisdiction over the action.

The case before us is easily resolved. But we note a potential tension between our precedent in *Johnson*—"[a] trust has the citizenship of its trustee or trustees," 437 F.3d at 899—and *Americold*, where the Supreme Court ultimately concluded that the citizenship of other, nontraditional trusts (like Maryland's real estate investment trusts) should be determined based on their members, not their trustees. Any friction is strictly superficial, however, since *Johnson*—and *Navarro*, and this case—all dealt with what the Court in *Americold* referred to as a "traditional trust." *Americold*, 136 S. Ct. at 1016. The Second Circuit has interpreted *Americold* as "distinguish[ing] (1) traditional trusts establishing only fiduciary relationships and having no legal identity distinct from their trustees, from (2) the variety of unincorporated artificial entities to which states have applied the 'trust' label, but which have little in common with traditional trusts." *Loubier*, 858 F.3d at 722. Although *Johnson* provided little description of the trust at issue there, it was "a trust whose sole trustee is a bank incorporated in Delaware with its principal place of business in Minnesota." 437 F.3d at 899. This almost certainly referred to a traditional trust, for which *Navarro* still provides guiding precedent. *Navarro* held that "a trustee is a real party to the controversy for purposes of diversity jurisdiction when he possesses certain customary powers to hold, manage, and dispose of assets for the benefit of others," 446 U.S. at 464—in other words, when a trustee oversees a traditional trust, as

distinguished by the Court in *Americold* from other artificial business entities.**[3]**

We further note that the Trust at issue in this case is, under any criteria, properly characterized as a traditional trust. In addition to the factors articulated in *Navarro*, other post-*Americold* circuit opinions have outlined various considerations to analyze when defining a trust. These include: the nature of the trust as defined by the applicable state law, *see Wang ex rel. Wong v. New Mighty U.S. Tr.*, 843 F.3d 487, 495 (D.C. Cir. 2016); whether the trust has or lacks juridical person status, *see id.*; whether the trustee possesses real and substantial control over the trust's assets, *see Bynane v. Bank of N.Y. Mellon*, 866 F.3d 351, 357 (5th Cir. 2017); and the rights, powers, and responsibilities of the trustee, as described in the controlling agreement, *see id*.

---

**[3]** Our sister circuits have reached similar conclusions post-*Americold*. *See GBForefront, L.P. v. Forefront Mgmt. Grp., LLC*, 888 F.3d 29, 32 (3d Cir. 2018) ("In light of the Supreme Court's decision in *Americold* . . . we conclude that the citizenship of a traditional trust is based only on the citizenship of its trustee."); *Doermer v. Oxford Fin. Grp., Ltd.*, 884 F.3d 643, 647 (7th Cir. 2018) ("As the Supreme Court repeatedly has explained, when a trustee of a traditional trust 'files a lawsuit or is sued in her own name, her citizenship is all that matters for diversity purposes.'" (quoting *Americold*, 136 S. Ct. at 1016)); *Bynane v. Bank of N.Y. Mellon*, 866 F.3d 351, 357 (5th Cir. 2017) ("*Navarro*'s rule is still good law: 'Where a trustee has been sued or files suit in her own name, the only preliminary question a court must answer is whether the party is an "active trustee[] whose control over the assets held in [its] name[] is real and substantial."'" (alterations in original) (quoting *Justice v. Wells Fargo Bank Nat'l Ass'n*, 674 F. App'x 330, 332 (5th Cir. 2016))); *Wang ex rel. Wong v. New Mighty U.S. Tr.*, 843 F.3d 487, 489–94 (D.C. Cir. 2016) (concluding that "the citizenship of a traditional trust depends only on the trustees' citizenship" because "*Americold* would not apply the *Carden* test to a traditional trust, as it is not an entity").

Here, Section 2.09 of the Agreement—"Establishment of Trust"—read,

> The Depositor does hereby establish, pursuant to the further provisions of this Agreement and the laws of the State of New York, an express trust to be known, for convenience, as "Nomura Home Equity Loan, Inc., Home Equity Loan Trust, Series 2006-HE2" and does hereby appoint HSBC Bank USA, National Association, as Trustee in accordance with the provisions of this Agreement.

Section 2.10 referred to the Trust as a "common law trust," and under New York law, legal title to trust property "vests in the trustee." N.Y. Est. Powers & Trusts Law § 7-2.1(a); *see also In re Beiny*, No. 621-M/2002, 2009 WL 1050727, at \*3 (N.Y. Sur. Ct. Apr. 20, 2009) ("[Section] 7-2.1(a) expressly provides that legal title to trust property vests solely in the trustees. Thus, neither the beneficiaries of a trust nor any one other than the trustee may validly encumber or convey legal title to property owned by a trust."), *aff'd sub nom. Wynyard v. Beiny*, 919 N.Y.S.2d 165 (App. Div. 2011). The Agreement also authorized HSBC to institute a "suit or proceeding in its own name as Trustee." *See Wells Fargo Bank, N.A. v. 390 Park Ave. Assocs.*, No. 16 Civ. 9112 (LGS), 2017 WL 2684069, at \*3 (S.D.N.Y. June 21, 2017) (concluding that an agreement "grant[ed] the Trustee substantially the same powers that the trustee in *Navarro* had" where the trustee held funds "for the exclusive use and benefit of all present and future Certificateholders" and was therefore "a 'real and substantial' party to the controversy"); *see also Oscar Gruss & Son, Inc. v. Hollander*, 337 F.3d 186, 195 (2d Cir. 2003) (determining that a party "was

clearly intended to be the 'master of the litigation'" where an "agreement entered into between [it] and its former employees gave [it] the express power to act on their behalf with regard to their rights in the warrants").[4]  Defendants observe that, "[n]ot surprisingly . . . New York Federal District Courts considering the citizenship of New York real estate mortgage investment trusts in the wake of *Americold* have distinguished the cases before them."[5]

In short, *Johnson* remains good law when applied to what *Americold* labelled traditional trusts; in such a case, as *Navarro* held, the trustee is the real party in interest, and so

---

[4] Defendants further note that "[w]hile much of the servicing and enforcement duties fall to the Master Servicer and subservicers under the [Agreement], any assignment of the Master Servicer role and its assigns and delegates must be reasonably satisfactory to the Trustee," and "the Trustee has the ability to terminate all the rights and obligations of the Master Servicer, at which time all rights and duties of the Master Servicer 'shall pass to and be vested in the Trustee.'"  *See LaSalle Bank Nat'l Ass'n v. Lehman Bros. Holdings, Inc.*, 237 F. Supp. 2d 618, 633 (D. Md. 2002) ("Merely because the [agreement] in this case delegates to [the servicer] the right to institute a suit in its capacity as Special Servicer does not affect the basic premise that the trustee of an express trust is the real party in interest when suing on behalf of the trust.").

[5] *See, e.g.*, *U.S. Bank Nat'l Ass'n v. 2150 Joshua's Path, LLC*, No. 13-cv-1598 (DLI)(SIL), 2017 WL 4480869, *3 (E.D.N.Y. Sept. 30, 2017) ("Unlike the Maryland [real estate investment trust] at issue in *Americold*, which was authorized to sue or be sued, '*under New York law, a trust cannot sue or be sued*, and suits must be brought by or against the trustee.'" (quoting *Springer v. U.S. Bank Nat'l Ass'n*, No. 15-cv-1107(JGK), 2015 WL 9462083, at *2 n.1 (S.D.N.Y. Dec. 23, 2015))); *U.S. Bank, Nat'l Ass'n v. UBS Real Estate Sec. Inc.*, 205 F. Supp. 3d 386, 411 (S.D.N.Y. 2016) (determining that "[t]he Trusts in this case are not analogous to the investment trust in *Americold*" because "[i]n contrast to a Maryland real estate trust, the Trusts have no power to sue on their own behalves and the Trustee alone is responsible for the corpus of the Trusts").

its citizenship, not the citizenships of the trust's beneficiaries, controls the diversity analysis. Here, HSBC—the trustee of a traditional trust—was sued in its own name and was the real party in interest to the litigation. Under any analysis, therefore, HSBC's citizenship is key for diversity purposes.

## CONCLUSION

*Americold* might have somewhat complicated how we should ascertain the citizenship of a trust, but it upset neither *Navarro* nor our precedent in cases where, as here, the trustee of a traditional trust is sued in its own name. Because HSBC and the other Defendants were not, like Demarest, citizens of California, there was complete diversity, and the district court properly exercised diversity jurisdiction.

**AFFIRMED.**